FILED
CLERK, U.S. DISTRICT COURT

DEC 19 2014

CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

RECEIVED
CLERK, U.S. DISTRICT COURT
DEC - 5 2014
CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

1  Name: Kawami Shannon
2  Address: 2313 Marilyn st
   Simi Valley, CA 93065
   Phone: (805) 244-6150

Fax: **LODGED**
CLERK, U.S. DISTRICT COURT
In Pro Per
10/28/2014
CENTRAL DISTRICT OF CALIFORNIA
BY: AP DEPUTY

CV14-9752 FMO PLA

LACV14-7567 (PLA)

~~2:14-cv-08339~~ (PLA)

LODGED
CLERK, U.S. DISTRICT COURT
SEP 29 2014
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

10  Kawami Shannon, Jonaya Haney
11  A.H. (minor) J.W. (minor)
    W.W. (minor) X.W. (minor)
12                          Plaintiff

13  Simi Valley School District
14  Debora Palmer
15  Stacy Roberts
16  County of Ventura
                            Defendant(s).

17  Tracy Thorne
18  Donte Few
19  Micki Constantine
20  Anne O'dell
21  Theresa Mayernik
22  Simi Valley Police Dept.
23  Don Anderson
24  Michelle Savage
25  Richard Gilman
26  Linda Stevenson
27  and persons and
28  does 1-10 Inclusive
              Defendants

CASE NUMBER:

To be supplied by the Clerk of
The United States District Court

Claim 1
Violation of Federal rights
Claim 2
          Monell-Related claims
Claim 3 Violation of states rights
Claim 4 Intentional infliction of
          Emotional Distress

Claim 5 False Imprisonment
Claim 6 Invasion of Privacy
Claim 7 Malpractice
Claim 8 Assault
Claim 9 Battery

CV-126 (09/09)          **PLEADING PAGE FOR A COMPLAINT**

1
2
3
4

KShannon

5
6

Kawami Shannon                    September 28, 2014

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CV-126 (09/09)                   PLEADING PAGE FOR A COMPLAINT

KAWAMI SHANNON
2313 Marilyn St.
Simi Valley, CA, 93065
805.244.6150


KAWAMI SHANNON, IN PRO PER


UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

- 1 -
**COMPLAINT FOR DAMAGES**

| | |
|---|---|
| 1  KAWAMI SHANNON, JONAYA HANEY, | ) Case No.: |
| 2  A.H.(Minor), J.W.(Minor), W.W. | ) |
| 3  (Minor), X.W.(Minor), | ) **COMPLAINT FOR DAMAGES** |
| 4           Plaintiff, | ) **Claim 1:** Violation of Federal |
| 5       vs. | ) Civil Rights |
| 6  SIMI VALLEY SCHOOL DISTRICT,a | ) **Claim 2:** Monell-Related Claims |
| 7  public entity;DEBORA PALMER,a | ) **Claim 3:** Violation of State |
| 8  public employee;STACY ROBERTS,a | ) Civil Rights |
| 9  public employee;COUNTY OF | ) **Claim 4:** Intentional Infliction |
| 10  VENTURA;a public entity; TRACY | ) of Emotional Distress |
| 11  THORNE,a public employee;DANTE | ) **Claim 5:** False Imprisonment |
| 12  FEW,a public employee;KATHY | ) **Claim 6:** Invasion of Privacy |
| 13  D'INCA,a public employee;MICKI | ) **Claim 7:** Malpractice |
| 14  CONSTANTINE,a public | ) **Claim 8:** Assault |
| 15  employee;ANNE ODELL,a public | ) **Claim 9:** Battery |
| 16  employee;THERESA MAYERNIK,a | ) |
| 17  public employee;SIMI VALLEY | ) **[JURY DEMANDED]** |
| 18  POLICE DEPARTMENT,a public | ) |
| 19  entity; DON ANDERSON,a public | ) |
| 20  employee;MICHELLE SAVAGE a | ) |
| 21  public employee;RICHARD GILMAN | ) |
| 22  a public employee; LINDA | ) |
| 23  STEVENSON,a public employee;AND | ) |
| 24  PERSONS)AND DOES)1-10 INCLUSIVE | ) |
| 25           Defendants | ) |

Plaintiffs, KAWAMI SHANNON, JONAYA HANEY,

A.H.,J.W.,W.W.,and X.W., respectfully represent and allege

as follows:

**JURISDICTION**

1.  KAWAMI SHANNON, JONAYA HANEY, A.H.,J.W.,W.W.,and X.W. bring this civil rights lawsuit pursuant to 42 U.S.C. Section 1983 to redress the deprivation by Defendants, at all times herein acting under color of state law, of rights secured to Plaintiffs under the United States constitution, including the First, Fourth, and Fourteenth Amendments, and under federal and state law where applicable.

2.  Jurisdiction is conferred on this Court by 28 U.S.C. sections 1343(a)(3) and 1343(a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. section 1983. Jurisdiction is also conferred by 28 U.S.C. section 1331 because claims for relief derive from the United States Constitution and the laws of the United States. This Court has supplemental jurisdiction over those claims of Plaintiffs based on state laws, pursuant to 28 U.S.C. section 1367.

**I**

**PARTIES**

3.   At all times relevant to this Complaint, Plaintiffs were residents of Ventura County, California. Plaintiff Kawami Shannon is the mother of Jonaya Haney and minors Plaintiffs, A.H.,J.W.,W.W.,and X.W. (a fictitious name is used herein to protect the minors' privacy). At the time the incidents giving rise to the causes of action in this Complaint occurred, W.W. was 8 years old.

4.   At all times applicable herein, the COUNTY OF VENTURA was and is a public entity ("County" or "County of Ventura").

5.   At all times applicable herein, the VENTURA COUNTY HEALTH & HUMAN SERVICES AGENCY ("HHSA" or "CPS") was and is a subdivision, entity, or administrative arm of the COUNTY OF VENTURA.

6.   At all times applicable herein, social worker TRACY THORNE ("Tracy Thorne" or "Thorne") was an individual residing, on information and belief, in the County of Ventura, and an officer, agent, and/or employee of County and HHSA. Defendant Thorne is sued herein in her official and individual capacities.

7.   At all times applicable herein, social worker THERESA MAYERNIK ("Theresa Mayernik" or "MAYERNIK") was an individual residing, on information and belief, in the County of Ventura, and an officer, agent, and/or employee of County and HHSA. Defendant Mayernik is sued herein in her official and individual capacities.

8.   At all times applicable herein, social worker MICKI CONSTANTINE ("Micki Constantine" or "CONSTANTINE") was an individual residing, on information and belief, in the County of Ventura, and an officer, agent, and/or employee of County and HHSA. Defendant Constantine is sued herein in her official and individual capacities.

9.   At all times applicable herein, social worker DANTE FEW ("Dante Few" or "FEW") was an individual residing, on information and belief, in the County of Ventura, and an officer, agent, and/or employee of County and HHSA. Defendant Few is sued herein in her official and individual capacities.

10.  At all times applicable herein, social worker KATHY D'INCA ("Kathy D'inca" or "D'INCA") was an

individual residing, on information and belief, in the County of Ventura, and an officer, agent, and/or employee of County and HHSA. Defendant D'inca is sued herein in her official and individual capacities.

11. At all times applicable herein, social worker ANNE ODELL ("Anne Odell" or "ODELL") was an individual residing, on information and belief, in the County of Ventura, and an officer, agent, and/or employee of County and HHSA. Defendant Odell is sued herein in her official and individual capacities.

12. Hereinafter, when referred to collectively, the defendants identified in paragraphs 4 through 11 will be referred to as "COUNTY DEFENDANTS."

13. At all times applicable herein, the CITY OF SIMI VALLEY was and is a public entity ("City" or "City of Simi Valley").

14. At all times applicable herein, the SIMI VALLEY POLICE DEPARTMENT ("Simi Valley Police Department" or "SVPD") was and is a subdivision, entity, or administrative arm of the CITY OF SIMI VALLEY.

15.   At all times applicable herein, OFFICER MICHELLE SAVAGE ("Officer SAVAGE" or "SAVAGE"), was an individual residing, on information and belief, in the County of Ventura, and an officer, agent, and/or employee of CITY OF SIMI VALLEY and SVPD, with badge #313. Defendant Savage is sued herein in his/her/its official and individual capacities.

16.  At all times applicable herein, OFFICER DON ANDERSON ("Officer ANDERSON" or "Anderson"), was an individual residing, on information and belief, in the County of Ventura, and an officer, agent, and/or employee of CITY OF SIMI VALLEY and SVPD, with badge #244. Defendant Anderson is sued herein in his/her/its official and individual capacities.

17.  Hereinafter, when referred to collectively, the Defendants in paragraphs 13 through 16, inclusive, will be referred to as CITY DEFENDANTS.

18.  At all times applicable herein, APPOINTED COUNSEL RICHARD GILMAN ("Richard Gilman" or "GILMAN") was an individual residing, on information and belief, in the

County of Ventura, and an officer, agent, and/or employee of Ventura County Juvenile Court. Defendant Gilman is sued herein in his official and individual capacities.

19. At all times applicable herein, COUNTY COUNSEL LINDA STEVENSON ("Linda Stevenson" or "STEVENSON") was an individual residing, on information and belief, in the County of Ventura, and an officer, agent, and/or employee of Ventura County Juvenile Court. Defendant Stevenson is sued herein in her official and individual capacities.

20. At all times applicable herein, the SIMI VALLEY SCHOOL DISTRICT was and is a public entity ("DISTRICT").

21. At all times applicable herein, MS.DEBORA PALMER ("PALMER"), the Simi Valley School Superintendent/ Principal, was an officer, agent and employee of the DISTRICT. Defendant Palmer is sued herein in her official and individual capacities.

22. At all times applicable herein, STACY ROBERTS ("ROBERTS") was an officer, agent and employee of the DISTRICT. Defendant Roberts is sued herein in her official and individual capacities.

23. Hereinafter, when referred to collectively, the defendants identified in paragraphs 23 through 25 will be referred to as the "DISTRICT DEFENDANTS." Hereinafter, when referred to collectively, the defendants identified in paragraphs 24 through 25 will be referred to as the "INDIVIDUAL DISTRICT DEFENDANTS."

24. At all relevant times, Defendants, and each of them, were the knowing agents and/or alter egos of one another, and that Defendants directed, ratified, and/or approved the conduct of each of the other Defendants, and each of their agents or employees, and are therefore vicariously liable for the acts and omissions of their co-defendants, their agents and employees, as more fully alleged herein. Moreover, all of the Defendants agreed upon, approved, ratified, aided and abetted, and/or conspired to commit all of the acts and/or omissions alleged herein below and thereby caused, or were a substantial factor in causing the injuries and damages alleged herein.

25. Whenever in this Complaint reference is made to any act of Defendants, such allegations shall be deemed to mean all named Defendants and DOES 1 through 50, or their officers, agents, managers, representatives, employees, heirs, assignees, customers, tenants, did or authorized such acts while actively engaged in the operation, management, direction or control of the affairs of Defendants and while acting within the course and scope of their duties, except as specifically alleged to the contrary.

26. At all times herein mentioned and with respect to the specific matters alleged in this Complaint, Plaintiff is informed and believes that each Defendant (including DOES 1 through 50), was and is the agent, employee, principal, employer and/or co-conspirator of each of the remaining defendants and/or vice versa. In addition, Plaintiffs are informed and believe and on such basis allege that the defendants named hereinabove, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above named

defendants conspired with, directed, ratified, approved, aided, abetted, and/or jointly collaborated with each of the remaining defendants in committing the acts herein alleged, and/or failed to prevent such acts when having the power and/or duty to do so, with full knowledge of said acts.

27. Plaintiffs are informed and believe and on such basis allege that each of the above named defendants were acting under color of law in committing the acts herein alleged, and that in doing the things herein alleged defendants, and each of them, were acting within the course and scope of their duties as employees or agents of each other.

## II

### COMMON ALLEGATIONS

28. Plaintiff W.W. was never diagnosed with asthma by his lifetime primary care physician John Ippolito, M.D. at Moorpark Family Care. John Ippolito, M.D. has been

1  providing medical care for my family since approximately

2  March of 2001.

3

4      29. On August 18, 2010 John Ippolito, M.D. was on

5  vacation, Khristina Mueller, M.D. at Moorpark Family Care

6

7  tested plaintiff W.W. and J.W. for asthma per my request.

8  Khristina Mueller, M.D. performed lung function tests, a

9  spirometer test, a peak flow meter test, and inhalants.

10

11 Khristina Mueller, M.D. compared the results to the

12 results found by John Ippolito, M.D. John Ippolito, M.D.

13

14 and Khristina Mueller, M.D. concluded that plaintiff W.W.

15 and J.W. did not have asthma. Khristina Mueller, M.D.

16 prescribed plaintiff W.W. and J.W. Singulair and Xopenex

17

18 due to their history of persistent coughing. Khristina

19 Mueller, M.D. classified the condition as reactive airway

20

21 disease. Reactive airway disease is a general term that

22 doesn't indicate a specific diagnosis. I administered the

23 Xopenex and Singulair to plaintiff W.W. and J.W. as

24

25 needed.

26

27

28

30. On November 18, 2010 three months later, plaintiff W.W. was taken to Sierra Vista Urgent Care for infection, cold and flu like symptoms.

31. On February 20, 2011 three months later, plaintiff W.W. was taken to Simi Valley Hospital emergency room due to persistent coughing caused by infectious bronchitis. Symptoms of infectious bronchitis usually starts with the characteristics of A common cold, plaintiff W.W. was treated and discharged.

32. On March 14, 2011 three weeks later, plaintiff W.W. was taken to Sierra Vista Urgent Care for infection, cold and flu like symptoms.

33. On January 25, 2012 ten months later, plaintiff W.W. was taken to Simi Valley Hospital emergency room due to persistent coughing caused by infectious bronchitis.

34. On January 30, 2012 plaintiff W.W. was returned to Justin Elementary School. I informed INDIVIDUAL DISTRICT DEFENDANTS that plaintiff W.W. was undergoing a seven day treatment for infectious bronchitis. INDIVIDUAL DISTRICT DEFENDANTS requested that an inhaler be provided

for school use as a precaution. INDIVIDUAL DISTRICT DEFENDANTS did not have the authority to administer the inhaler that was in my possession. I scheduled an appointment with the physician to authorize INDIVIDUAL DISTRICT DEFENDANTS to administer an inhaler for plaintiff W.W. In the interim I began to consistently receive calls from INDIVIDUAL DISTRICT DEFENDANTS claiming that plaintiff W.W. was having an "Asthma Attack". I would arrive at the school and find plaintiff W.W. "NOT" experiencing difficulty breathing nor coughing, completely asymptomatic. I would administer the inhaler as to prevent further interruption to his education.

35. On February 20, 2012 I Arrived At Justin Elementary At Approximately 2:30 P.M. plaintiff W.W. and plaintiff J.W. were waiting in the school office for me as they often did. School is dismissed at 2:18 P.M. however, if I don't arrive by the time plaintiff W.W. and plaintiff J.W. make it to the front of the school, plaintiff J.W. prefers to wait in the school office. Prior To February 20, 2012 STACY ROBERTS stressed that she prefered that

plaintiff W.W. and plaintiff J.W. wait outside in front of
the school, I instructed plaintiff W.W. and plaintiff J.W.
to do so. plaintiff W.W. and plaintiff J.W. chose to wait
in the school office again on a later date. When I Arrived
To Pick Up plaintiff W.W. and plaintiff J.W. STACY ROBERTS
addressed the situation with anger, yelling and threats of
Police involvement, plaintiff W.W. and plaintiff J.W., as
well as other children and parents were present. I
reported this incident to the DISTRICT and got no
response, I warned plaintiff W.W. and plaintiff J.W.
against waiting in the School Office in the future. I
instructed them to start walking home if I don't arrive by
2:30 PM and I will pick them up from Justin Avenue.

36. On March 5, 2012 due to traffic leaving Moorpark
College I didn't arrive at Justin Elementary by the time
plaintiff W.W. and plaintiff J.W. made it to the front of
the school. Plaintiff J.W. was confused because her watch
read the time of 2:30 P.M., The school clock read the time
of 2:25 P.M. Plaintiff J.W. was uncertain of what to do.
Due to the previous incident with STACY ROBERTS lashing

- 15 -
COMPLAINT FOR DAMAGES

out in rage and the stern warning against waiting in the

school office Plaintiff J.W. began to cry. DEBORA PALMER

escorted plaintiff W.W. and plaintiff J.W. to the school

office. Plaintiff J.W. became more upset due to the fact

that she was firmly instructed not to wait there.

Plaintiff J.W. told INDIVIDUAL DISTRICT DEFENDANTS that

she was upset because I would or that I have spanked her

with a hanger. I have disciplined all of my children in

this manner however it was never an ongoing method,

however they do remember it. SIMI VALLEY POLICE DEPARTMENT

and The Department of Children And Family Services were

informed of the concerns of INDIVIDUAL DISTRICT DEFENDANTS

understandably, but the concerns were reported along with

additional false information. I contacted the DISTRICT

regarding the false reporting, I received no response.

37.  In April of 2012, Marsha Schneider, R.N. Of

Justin Elementary with my consent requested a rescue

inhaler from Khristina Mueller, M.D. for plaintiff W.W.

The inhaler was provided however, I continued to receive

calls INDIVIDUAL DISTRICT DEFENDANTS claiming that

plaintiff W.W. was having an "Asthma Attack". This continued throughout the school year along with requests to take plaintiff W.W. home because he was sick. I tolerated this because Justin Elementary is in walking distance from our home and I can't drive them to school on a daily basis.

38.  In June of 2012 Khristina Mueller, M.D. denied the request to refill the Xopenex and Singulair regimen that was prescribed for plaintiff W.W. and plaintiff J.W. on August 18, 2010. I wasn't advised by the Pharmacy to contact Khristina Mueller, M.D. but was told that the request would be re-sent. I didn't pursue a refill at that time because plaintiff W.W. and plaintiff J.W. don't use Xopenex and Singulair during the summer months and I still had plenty of medication on hand due to the infrequent use.

39.  On September 05, 2012 plaintiff W.W. was transported to the emergency room from school due to shortness of breath and persistent coughing. The treating physician indicated that plaintiff W.W.'s persistent

coughing was associated with an infection as were all the episodes of persistent coughing on record. The usual course of antibiotics and inhaler were prescribed and due to the lack of severity of symptoms a follow-up visit was not requested by the physician. I was informed by the school nurse, Marsha Schneider R.N. that the inhaler provided in March could not be administered on September 05, 2012 by law because it was a new school year. The school nurse, Marsha Schneider R.N. with my consent contacted Khristina Mueller, M.D. and requested a rescue inhaler for plaintiff W.W.. The request was denied and the next available appointment at Moorpark Family Care was for September 21, 2012 with the Nurse Practitioner and October 21, 2012 with the Primary Care Physician.

40. On September 11, 2012 plaintiff W.W. was returned to school after being treated for six days. INDIVIDUAL DISTRICT DEFENDANTS filed a complaint with Department of Children and Family Services because they were under the impression that plaintiff W.W. and J.W. were experiencing "Asthma Symptoms". INDIVIDUAL DISTRICT DEFENDANTS also

- 18 -
COMPLAINT FOR DAMAGES

1  complained to the Department of Children and Family

2  Services stating that on September 05, 2012 plaintiff W.W.

3

4  suffered a "Severe Asthma Attack", this information was

5  false. TRACY THORNE & THERESA MAYERNIK arrived at my home

6

7  under the impression that plaintiff W.W. had "Severe

8  Asthma" and was not undergoing treatment. This impression

9

10  was due to the false and inaccurate information provided

11  by INDIVIDUAL DISTRICT DEFENDANTS. I signed an

12  authorization to release all medical records for the

13  COUNTY DEFENDANTS to investigate. A doctors appointment

14

15  was scheduled on my behalf by COUNTY DEFENDANTS the visit

16  was for the following day, I was not able to attend this

17

18  appointment due to a prior appointment. Plaintiff W.W. had

19  been treated for the infectious bronchitis for six days

20

21  and did not display any symptoms. Plaintiff W.W.

22  accompanied me at my appointment.

23      41.  On September 13, 2012 Plaintiff W.W., J.W. and

24

25  X.W. had a check-up with Renee Hook, M.D. at Sierra Vista

26  Urgent Care. The lung function tests and the peak Flow

27

28  tests came back negative for "Asthma". Renee Hook, M.D.

wrote prescriptions for Xopenex and  Singulair for use at Justin Elementary School with a diagnosis of exercise induced asthma as 'requested' by TRACY THORNE & THERESA MAYERNIK.

42.  On September 19, 2012 a meeting was held at Justin Elementary School regarding plaintiff W.W. It was held without me or my knowledge. In attendance, School Principal, Debra Palmer, Marsha Schneider R.N., Mary Lawrence (previous teacher), Norine Yale (current teacher), Alexandra Van Sickle (SAI Teacher), and Sue Kriloff (School Pathologist). During this meeting Justin Elementary School staff members were given incorrect information in regard To plaintiff W.W.'s condition or lack there of and his school attendance. Had I been present at this meeting I could have clarified these things.

43.  On September 21, 2012 I was notified by CYNDI FLYNN of Justin Elementary School that plaintiff W.W. was having a "Severe Asthma Attack" and that the Paramedics were in route. The Paramedic assessed plaintiff W.W. and

found that he was receiving 100% oxygen and his vitals were all normal. DEBORA PALMER disagreed with the Paramedic's assessment and and also with my assessment of plaintiff W.W. The paramedic explained to DEBORA PALMER that the "severe asthma attack" was non existent. DEBORA PALMER insisted that plaintiff W.W. be treated for a non existent "severe asthma attack". The Paramedic refused to treat plaintiff W.W. and with my permission, he cancelled the dispatch call and left the scene.

44. On September 24, 2012 plaintiff W.W. was returned to school after being home for two days for no reason, I received a call from STACY ROBERTS claiming that plaintiff W.W. was having a "severe asthma attack". When I arrived at Justin Elementary plaintiff W.W. was "NOT" experiencing any shortness of breath. I had a meeting with the school nurse, Marsha Schneider R.N. and DEBORA PALMER. I informed both of them that if and when plaintiff W.W. is experiencing shortness of breath a persistent cough will also be present. Marsha Schneider R.N. and DEBORA PALMER rejected this information. I signed a medical release form

as requested by Marsha Schneider R.N. and a same day appointment with the Nurse Practitioner at Moorpark Family Care was scheduled on my behalf. The appointment was scheduled for 1:45 P.M., plaintiff J.W. and plaintiff X.W. were out of school at 2:18 P.M., it was impossible for me to keep this appointment. DEBORA PALMER filed a complaint with the Department of Children and Family Services because I couldn't keep this appointment and also claimed that on September 21, 2012 plaintiff W.W. suffered a "Severe Asthma Attack" and that I declined treatment by the Paramedic. If that was the understanding of DEBORA PALMER a complaint should have been filed on September 21, 2012 the day of the incident.

45. On September 26, 2012 COUNTY DEFENDANTS conspired with CITY OF SIMI VALLEY DEFENDANTS, to seize W.W., without notice, without consent, without a warrant, and in the absence of exigent circumstances. Although the department of children and family services received a child neglect referral on September 24, 2012 it took (2)two days before W.W. was seized on September 26, 2012

which was (5) five days after the incident. W.W. could
have been placed with Grandmother and Aunt however,
kinship care was not offered. ASFA requires that the
department "consider giving preference to an adult
relative over a non-related caregiver" when making
placement decisions. COUNTY DEFENDANTS nor CITY OF SIMI
VALLEY DEFENDANTS had no reason to believe that W.W. was
in imminent danger of sustaining serious bodily injury or
death within the time it would take to obtain a warrant.
Thereafter, in a malicious effort to prolong the unlawful
detention of W.W., and to cover up their substantial
misdeeds, COUNTY DEFENDANTS, submitted false and perjured
testimony and evidence to the Juvenile Court, and
suppressed material exculpatory information. They
intentionally and maliciously represented that W.W. was a
diagnosed asthmatic, despite the lack of any such
diagnosis or history of the illness, and falsely claimed
that A.H., J.W., W.W. & X.W. were left without means of
support. They also claimed that I had "failed" to follow
up with recommendations for 'asthma treatment', and had

- 23 -
COMPLAINT FOR DAMAGES

"failed" to obtain medical care for my 'asthmatic children', none of this was true. The truth is that after W.W. was prescribed antibiotics for persistent coughing due to infectious bronchitis, I did not attend follow-up appointments because I didn't feel that they were necessary. The physicians can RECOMMEND anything they wish, but W.W.'s care is NOT their decision. It is strictly the parents' decision except in the case of a medical emergency. I was exercising my parental rights in choosing the care of W.W. California Welfare and Institutions Code Section 16509 states that "Cultural and religious child- rearing practices and beliefs which differ from general community standards shall not in themselves create a need for child welfare services unless the practices present a specific danger to the physical or emotional safety of the child."

46.   By the time COUNTY DEFENDANT's began their investigation, on or about September 26, 2012, they knew that the unconstitutional removal of W.W. was a mistake. Yet, no one requested dismissal of the case. Instead,

COUNTY DEFENDANT's conspired to concoct a new theory for continued detention, i.e. that W.W. suffered several (7) 'severe asthma attacks', that required emergency personnel to be dispatched and that W.W. was left without means of support. This false information was communicated To Khristina Mueller, M.D. of Moorpark Family Care by COUNTY DEFENDANTS which lead her to believe that plaintiff W.W. had been formally diagnosed with asthma and should have been receiving ongoing treatment.

47. On September 28, 2012, COUNTY COUNSEL verified and filed a Juvenile Dependency Petition, that contained numerous misrepresentations and omissions of exculpatory facts. COUNTY COUNSEL signed the petition under penalty of perjury. Thus, as in Kalina, she was the complaining witness. COUNTY COUNSEL knew or had reason to know at the time the petition was verified, that the statements contained therein were false either directly or by omission of exculpatory facts, or COUNTY COUNSEL didn't care whether the allegations were true or false and made no effort to find out or otherwise investigate. When a

person who makes a statutorily required "Oath or affirmation" is a lawyer, the only function that she performs in giving sworn testimony is that of a witness. (Kalina v. Fletcher (1997) 522 U.S. 118, 131; see also Milstein v. Cooley (9th Cir. 2001) 257 F.3d 1004, 1010.) Tradition, as well as the ethics of the legal profession, generally instruct counsel to avoid the risks associated with participating as both advocate and witness in the same proceeding. (Kalina, supra, 522 U.S. at 130.)

48. On October 1, 2012 I arrived at court unaware of my exact reason for being there. COUNTY DEFENDANTS reported that plaintiff W.W. has "Severe Asthma" and has suffered "Several" (7) asthma attacks so severe that emergency personnel needed to be dispatched. COUNTY DEFENDANTS reported that there is not a relative able, approved and willing to care for plaintiff W.W. I am the fourth of eight (8) children and both of my parents are alive and well. I have a very large family with many options. My Mother and my younger sister (36), reside together in Sun Valley, CA. After reading the report, I

became aware of the fact that my rights and plaintiff Jonaya Haney, A.H., J.W., W.W. & X.W. had been violated. I requested that the court appoint an attorney for me, the hearing was scheduled for October 29, 2012. Thereafter, COUNTY DEFENDANT's reiterated the false statements made in prior reports and failed to let the court know that W.W. had not been harmed in my care. The social workers that filed subsequent reports also repeated the same misrepresentations and made others as part of a conspiracy to deprive me of my rights.

49.   On October 29, 2012 my written response and evidence was withheld by COUNTY DEFENDANTS and by APPOINTED COUNSEL RICHARD GILMAN. APPOINTED COUNSEL RICHARD GILMAN was ineffective by failing to challenge the WIC section 300, subdivision (b) & (j) jurisdictional findings in the dependency proceedings. APPOINTED COUNSEL RICHARD GILMAN willfully concealed facts, did not object to the allegations and did not contest the petition. "If The Defendant Fails To Respond To An Allegation By Either Denying It Or By Stating He Or She Does Not Have The

Information Necessary To Admit Or Deny It, It Is Considered Admitted Under Rule 8(d)." The advice given to me by APPOINTED COUNSEL RICHARD GILMAN was to 'sign the case plan' and 'take it to trial'. I Requested that APPOINTED COUNSEL RICHARD GILMAN withdraw from the case.

50. W.W. was not returned and and on November 1, 2012, INDIVIDUAL COUNTY DEFENDANTs under duress in order to regain custody of plaintiff W.W., insisted that plaintiff's KAWAMI and J.W. engage in 'services' that were inappropriate, unnecessary, and completely irrelevant to the situation.(See Monell v. Dept. of Social Services of New York (1978) 436 U.S. 658; see also, CACI § 3007) The department must involve the parents in the case plan development. 45 C.F.R. § 1356.21(g)(1). The 'services' included parenting classes and also mental therapy which were found to be merely an exploitation of plaintiffs KAWAMI & J.W. because the state was being billed, however no services were being provided.

51. On December 26, 2012 I took plantiff W.W. to Sierra Vista for a follow-up visit and also to speak with

Lois Lepeles, M.D. about her 'Severe Asthma Diagnosis' that was made while plaintiff W.W. was in custody. Lois Lepeles, M.D. was unable to provide medical facts to support the diagnosis. Diagnosing Asthma generally includes medical history, physical exam and lung tests. Lois Lepeles, M.D. showed me only peak flow meter levels that were used to make the Asthma diagnosis. I showed Lois Lepeles, M.D. plaintiff W.W.'s medical records and she indicated that the medical history was incorrect. She has since been discharged from her position and terminated from the state medi-cal program for fraud.

52.   There was never any legal or evidentiary basis for the petition to begin with; and the petition to which 'I' contested and not APPOINTED COUNSEL, stated no facts sufficient to support any detention of plaintiff W.W at all.

> a. When a child is removed from the home, ASFA requires that the court make a finding that it is contrary to the child's welfare to remain in the home. 42 U.S.C. § 671(a)(15)(B)(i); 45 C.F.R. §

1356.21(c). The contrary to the welfare finding must be: Made at the first court hearing that sanctions, even temporarily, the child's removal. 45 C.F.R. § 1356.21(c); Explicitly documented by reference to facts. 45 C.F.R. § 1356.21(d); and Made on a case-by-case basis. 45 C.F.R. § 1356.21(d).

b. The contrary to the welfare finding may not be: Made retroactively. 45 C.F.R. § 1356.21(d); Made by a mere reference to a court report without citing specific facts from the report. 65 Fed. Reg. 4056 (Jan. 25, 2000); or Made by mere reference to a state statute without citing facts from the case. 45 C.F.R. § 1356.21(d). If the finding is not made at the correct time, or is not adequate, the child loses all eligibility for Title IV-E (of the Social Security Act) funding for the child's entire stay in foster care. 45 C.F.R. § 1356.21(c).

c. If the child can safely remain in the home, the child should be returned home with services rather than placed in out-of-home care. 42 U.S.C. § 671(a)(15)(B)(i). ASFA requires that the court make a finding that reasonable efforts were made by the department to prevent the child's removal. 42 U.S.C. § 671(a)(15)(B)(i); 45 C.F.R. § 1356.21(b)(1). If the reasonable efforts finding is not made by the 60-day deadline, or is not adequate, the child loses all eligibility for Title IV-E (of the Social Security Act) funding for the child's entire stay in foster care. 45 C.F.R. § 1356.21(c).

d. If the child could have remained in the home if the department had provided services, the child should be returned home with services rather than placed in out- of-home care. 42 U.S.C. § 671(a)(15)(B)(i). Substantial evidence is any evidence which is of ponderable legal significance; it is not "any" evidence, but must

be "reasonable in nature, credible, and of solid value." (In re Victoria M. (1989) 207 Cal. App. #d 1317, 1326.) Section 300, subdivision (b) permits the juvenile court to assume jurisdiction over a minor when the minor has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness as a result of the parent's willful or negligent failure to provide the minor with adequate medical treatment. (§ 300, (b).) Section 300, subdivision (b) consists of three elements: (1) neglectful conduct by the parent; (2) causation; and (3) serious physical harm or illness to the minor, or a substantial risk of such harm or illness.

53.   DEBORA PALMER & STACY ROBERTS prohibited me from any contact with plaintiff W.W. on Justin Elementary Campus, I was not able to even speak to plantiff W.W. and I had full control of his educational rights. After enduring approximately three(3) months of supervised

visits for one hour per week, unsupervised visits for one(1) month, unwarranted detention of W.W., wearying injustice, and vexing accusations of neglect, as well as the attendant stress and emotional anguish of separation from W.W., he was returned to my physical custody on a(60) sixty day in home visit. Although W.W. was back in my physical custody, the invasion of privacy (intrusion) and (4)four hours of weekly ordered 'services' continued. After tort claims were filed all 'services' were terminated immediately.

54. In February of 2013 I officially removed plaintiff J.W., W.W., & X.W. from Justin Elementary School. DEBORA PALMER & STACY ROBERTS withheld all school records of plantiffs J.W., W.W., & X.W. to prevent relocation, and I had full control of all educational rights. I reported DEBORA PALMER & STACY ROBERTS to the district but got no response. J.W., W.W., & X.W. began home school through K-12 online free public school without any records of their prior education, the school started them from the beginning. J.W., W.W., & X.W. no longer

attended Justin Elementary School however DEBORA PALMER continued to harass me by phone, by email, and by mail. DEBORA PALMER also harassed the social worker that was overseeing the case at that time, the harassment continued through April of 2013. I reported DEBORA PALMER to the department of education and after Michael Chang Civil Rights Attorney U.S. of Department of Education contacted DEBORA PALMER the harassment finally ceased.

    a. Plaintiffs are informed and believe, and thereupon allege, that the DISTRICT DEFENDANTS have an established policy to discourage 'African American' children from asserting their rights under various federal and state laws. Plaintiffs are informed and believe, and thereupon allege, that the DISTRICT DEFENDANTS sought to discourage the students and their parents from asserting any rights. Plaintiffs further are informed and believe, and on that basis allege, that if that failed, the DISTRICT DEFENDANTS would often retaliate against such families by the wrongful

involvement of CPS. To accomplish this end the

DISTRICT DEFENDANTS in this case, told knowing

lies and falsehoods about plaintiffs, and sought

to destroy plaintiffs' reputation.

b. Plaintiffs are informed and believe, and

thereupon allege, that the INDIVIDUAL DISTRICT

DEFENDANTS knew, without limitation, how the

COUNTY DEFENDANTS, including CPS and the POLICE

DEPARTMENT would proceed. This included, without

limitation, that the COUNTY DEFENDANTS had a well

established pattern, practice and custom of

violating constitutional rights under First,

Fourth and Fourteenth Amendment of the U.S.

Constitution and state law (irrespective of

whether the INDIVIDUAL COUNTY DEFENDANTS knew

their practices and customs were illegal, they

knew of the practices and customs), including, in

the within matter, plaintiffs' rights to be free

from unlawful seizure, including seizures without

a warrant or exigent circumstances, as alleged in

Count One of the Seventh Cause of Action, and of

Familial Association, as alleged in Count Two of

the First Cause of Action.

c. The DISTRICT DEFENDANTS may seek to assert

state law immunities to federal claims,

including, without limitation, absolute immunity

under California Penal Code § 11172. However,

"[i]mmunity under § 1983 is governed by federal

law; state law cannot provide immunity from suit

for federal civil rights violations." Wallis v.

Spencer, 202 F.3d 1126, 1144 (9th Cir. 1999);

Martinez v. California, 444 U.S. 277, 284, n. 8

(1980) ("Conduct by persons acting under color of

state law which is wrongful under 42 U.S.C. §

1983 . . . cannot be immunized by state law");

Good v. Dauphin County Social Serv., 891 F.2d

1087, 1090-91 (3d Cir. 1989) (state laws

providing immunity from suit for child abuse

investigators have no application to suits under

§ 1983); Buckheit v. Dennis, 2010 U.S. Dist.
LEXIS 48958 (N.D. Cal. May 18, 2010); John Doe v.
Regents of the Univ. of Calif., 2006 U.S. Dist.
LEXIS 65035, 2006 WL 2506670 * 5 (E.D. Cal. Aug.
29, 2006). Notwithstanding the foregoing,
Plaintiffs further allege, based on information
and belief, that the INDIVIDUAL DISTRICT
DEFENDANTS do not qualify for absolute immunity
under state or federal law.

55.  Plaintiffs are informed and believe that the
DISTRICT DEFENDANTS, as orchestrated by DEBORA PALMER,
made numerous contacts to CPS and SIMI VALLEY POLICE
DEPARTMENT, including knowingly telling lies and
falsehoods.

56.  At no time prior to W.W.'s removal and detention
did any Defendant attempt to obtain a warrant or other
court order authorizing the removal of W.W. Plaintiffs are
informed and believe, and on that basis allege, that the
removal was done in secret, without a warrant, in the
absence of exigent circumstances, and in the absence of

any imminent danger of serious bodily injury, in accordance with the general policies, practices, customs and usages of VENTURA COUNTY and its POLICE.

57. Notwithstanding the foregoing, POLICE DEFENDANTS and CPS, prepared a Juvenile Dependency Petition filed in the Superior Court of California, County of VENTURA, Juvenile Court that contained knowingly false information and purposely suppressed, and failed to include, exculpatory evidence. Said defendants, and each of them, participated in the fabrication of evidence with the intent to submit that false evidence to the Court and suppress exculpatory evidence. (see, Govt. Code Section 820.21) Thereafter, on, Social Studies and Supplemental Reports that related to the plaintiffs contained knowingly false information and purposely suppressed exculpatory evidence.

58. In submitting such documentation, DEFENDANTS, including Defendant THORNE, CONSTANTINE & MAYERNIK intentionally and knowingly did so with a conscious disregard for the rights and well being of the plaintiffs.

### III

## FIRST CAUSE OF ACTION FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. §1983)

(By All Plaintiffs Against COUNTY and DISTRICT DEFENDANTS)

59. Plaintiffs re-allege, and to the extent applicable, incorporates by reference herein as if set forth in full, all paragraphs from the Common Allegations above, and the First through Tenth Causes of Action.

### COUNT ONE

### (Unlawful Seizure)

*(By Plaintiff W.W. Against COUNTY AND CITY DEFENDANTS)*

60. Plaintiffs re-allege, and to the extent applicable, incorporates by reference herein as if set forth in full, all paragraphs from the Common Allegations above, and the First through Tenth Causes of Action.

61. Under the circumstances of this case, minor Plaintiff W.W. had the right to be free from unreasonable seizure under, without limitation, the Fourth and Fourteenth Amendments of the Constitution of the United States, which right is "clearly established" such that a

reasonable sheriff and social worker in Defendants' situation would know it is wrong to interfere in a child's right to remain with his parents in the absence of exigent circumstances, and that such right may not be impinged upon without first obtaining a warrant or other court order to do so.

62. In the absence of exigent circumstances, and without any evidence to suggest that W.W. was in imminent danger of suffering serious bodily injury at the hands of either Plaintiff Parent, on September 26, 2012, and continuing thereafter, COUNTY DEFENDANTS and CITY DEFENDANTS, and each of them, acting under color of law, agreed, and/or conspired to unlawfully seize and detain minor Plaintiff W.W. from the care of his parent. COUNTY DEFENDANTS' and CITY DEFENDANTS' conduct was without proper justification or authority, and without probable cause, consent, exigency, or court order. (See, Mabe v. County of San Bernadino (2001) 237 F.3d 1101). Further, COUNTY DEFENDANTS' and CITY DEFENDANTS' actions were taken with deliberate indifference to Plaintiff's rights.

63.  COUNTY DEFENDANTS, and each of them, conspired to violate the civil rights of the Plaintiff, including those rights found in the Fourth Amendment of the United States Constitution by, but not limited to, aiding and abetting each other in the unlawful seizure and removal of minor Plaintiff W.W., without a warrant, consent, probable cause, or exigent circumstances, in violation of Plaintiff's right to be free from unreasonable seizure under the Fourth Amendment, as well as those rights under applicable California law rising to the level of a constitutionally protected right. COUNTY DEFENDANTS acted, or purported to act, in the performance of their official duties. COUNTY DEFENDANTS acted with a common objective; to wit to unlawfully remove and detain W.W. from his parents for no reason other than to effect an attitude adjustment on W.W.'s parents. This is per se and unlawful purpose.

64. As a direct and proximate result of these DEFENDANTS' actions, minor Plaintiff W.W. has suffered, and will continue to suffer permanent physical, mental,

and emotional injury, all to an extent and in an amount subject to proof at trial. Plaintiffs have also incurred, and will continue to incur, attorneys' fees, costs and expenses, including those authorized by 42 U.S.C. Section 1988, to an extent and in an amount subject to proof at trial.

65. As a direct and proximate result of these DEFENDANTS' actions, minor Plaintiff W.W. has suffered, and will continue to suffer permanent physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial.

66. The actions of DEFENDANTS, and each of them, are the legal and proximate cause of Plaintiff(s), to sustain the damages and injuries claimed herein associated with the removal of the minor Plaintiff from his Plaintiff Parent' custody, and injuries and damages suffered subsequently thereafter, which have been ongoing and continuous since the date of the minor Plaintiff's removal from his Plaintiff Parent through the present, including without limitation severe and permanent personal,

emotional and physical injuries, suffering financial

damage in amounts presently unknown to the Plaintiff(s),

which are expected to continue into the future, subject to

proof at trial.

67. As a direct and proximate result of the acts and

omissions of the defendants, and each of them, as

aforesaid, plaintiff(s) have been required to hire and

retain the services of medical doctors, physicians,

hospitals and other practitioners and will be required to

do so, indefinitely in the future, for the proper care and

treatment of injuries in amounts presently unascertained;

plaintiff(s) prays leave when said amounts are

ascertained, they may be permitted to amend and insert the

same herein with appropriate allegations.

68. As a further direct and proximate result of the

acts and omissions of the defendants and each of them, as

aforesaid, plaintiff(s) sustained wage loss and a future

loss of earning capacity, in amounts presently

unascertained; plaintiff(s) prays leave when said amounts

are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

69. On information and belief, INDIVIDUAL COUNTY DEFENDANTS and each of them, acted with malice and with the intent to cause injury to minor Plaintiff W.W., or acted with a willful and conscious disregard of the rights of Plaintiff in a despicable, vile, fraudulent, and contemptible manner. Therefore, Plaintiff is entitled to an award of punitive damages for the purpose of punishing INDIVIDUAL COUNTY DEFENDANTS, and to deter them and others from such conduct in the future.

## COUNT TWO

### (Familial Association)

(By All Plaintiffs Against COUNTY AND CITY DEFENDANTS)

70. Plaintiffs are informed and believe and thereon allege that the right to familial association guaranteed under, without limitation, the First, Fourth and Fourteenth Amendment is "clearly established" such that a reasonable sheriff and/or social worker in Defendants' situation would know it is unlawful to remove a child from

the care, custody, and control of its parents or to question, threaten, examine, or search a child in the absence of exigent circumstances without first obtaining a warrant to do so. In addition, there is a clearly established due process right not to be subjected to false accusations on the basis of false evidence that was deliberately fabricated by the government such that a reasonable social worker and/or police officer in these Defendants' situation would know it is unlawful to lie, fabricate evidence, and suppress exculpatory evidence.

71. Commencing on September 26, 2012, and continuing thereafter, DEFENDANTS, and each of them, were acting under color of state law when they agreed, and/or conspired to unlawfully remove, detain, question, threaten, examine, investigate, search, and/or falsely report regarding Plaintiffs, and each of them. Defendants did so without proper justification or authority, and without probable cause, exigency, or court order. (See, Mabe v. County of San Bernadino (2001) 237 F.3d 1101).

Further, DEFENDANTS' actions were taken with deliberate indifference to Plaintiffs' rights.

72. DEFENDANTS, and each of them, maliciously conspired to violate the civil rights of the Plaintiffs, including violation of the Plaintiffs' rights found in, without limitation, the First, Fourth, and Fourteenth Amendments of the United States Constitution, by, but not limited to, removing, detaining, and continuing to detain, Plaintiff W.W. from the care, custody, and control of his parent without proper or just cause and/or authority; by subjecting minor Plaintiff W.W. to examinations, treatments without consent, authority, or the presence of his parent; by the use of coercion and duress to obtain evidence and testimony; and by maliciously falsifying evidence, and presenting fabricated evidence to the court, and maliciously refusing to provide exculpatory evidence during the pendency of the dependency proceedings in violation of Government Code §820.21, and violating the Constitutional rights of Plaintiffs.

73. By these actions, DEFENDANTS, and each of them, interfered and/or attempted to interfere with Plaintiffs' constitutional rights to familial association, and rights to be free of charges based on false evidence, both such rights arising under, without limitation, the First, Fourth and Fourteenth Amendments, as well as those rights under applicable California Law rising to the level of a constitutionally protected right.

74. As the direct and proximate result of these DEFENDANTS' actions, Plaintiffs have suffered, and will continue to suffer permanent physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial. Plaintiffs have also incurred, and will continue to incur, attorneys' fees, costs and expenses, including those authorized by 42 U.S.C. Section 1988, to an extent and in an amount subject to proof at trial.

75. The actions of DEFENDANTS, and each of them, are the legal and proximate cause of Plaintiff(s), to sustain the damages and injuries claimed herein associated with

the removal of the minor Plaintiff from his Plaintiff Parents' custody, and injuries and damages suffered subsequently thereafter, which have been ongoing and continuous since the date of the minor Plaintiff's removal from his Plaintiff Parents through the present, including without limitation severe and permanent personal, emotional and physical injuries, suffering financial damage in amounts presently unknown to the Plaintiff(s), which are expected to continue into the future, subject to proof at trial.

76. As a direct and proximate result of the acts and omissions of the defendants, and each of them, as aforesaid, plaintiff(s) have been required to hire and retain the services of medical doctors, physicians, hospitals and other practitioners and will be required to do so, indefinitely in the future, for the proper care and treatment of injuries in amounts presently unascertained; plaintiff(s) prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

77. As a further direct and proximate result of the acts and omissions of the defendants and each of them, as aforesaid, plaintiff(s) sustained wage loss and a future loss of earning capacity, in amounts presently unascertained; plaintiff(s) prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

78. On information and belief, COUNTY DEFENDANTS and each of them, acted with malice and with the intent to cause injury to Plaintiffs, and each of them, or acted with a willful and conscious disregard of the rights of Plaintiffs in a despicable, vile, and contemptible manner. Therefore, Plaintiffs are entitled to an award of punitive damages only against the individual defendants (as opposed to the agency or municipality) for the purpose of punishing DEFENDANTS, and to deter them and others from such conduct in the future.

**COUNT THREE**

**(42 U.S.C. § 1983 Claim For Substantive Due Process)**

(By Plaintiffs KAWAMI, and W.W. Against INDIVIDUAL

DISTRICT DEFENDANTS)

79. Plaintiffs re-allege, and to the extent applicable, incorporates by reference herein as if set forth in full, all paragraphs from the Common Allegations above.

80. Plaintiffs are informed and believe, and thereupon allege, that:

    a.   DEBORA PALMER, the Justin Elementary School Superintendent/Principal, was responsible for the execution at her school of a policy to discourage African American children from asserting their rights under various federal and state laws. Plaintiffs are informed and believe, and thereupon allege, PALMER sought to discourage the students and their parents from asserting any rights. If that failed, the DISTRICT, by PALMER, retaliated against such families;

    b.   In March of 2010 PALMER made a false report to Child protective services claiming that

plaintiff X.W. had defecated on himself and that they were unable to contact me. plaintiff X.W. had in fact NOT defecated on himself but had a rotting carton of milk from the prior day school lunch in his backpack. There was no feces anywhere so PALMER made it up.

c.   Throughout the school years 2010 through 2012, I was constantly urged to pick up plaintiff J.W., W.W., and X.W. from school for non existent illnesses. I spent an unspecified amount of time at home with asymptomatic children.

81.  Plaintiffs are informed and believe, and thereupon allege, PALMER sought to discourage African American students and their parents from asserting any rights. If that failed, the DISTRICT, by PALMER, retaliated against such families. The allegations against the Plaintiffs, in substantial part, were that W.W. has "SEVERE ASTHMA" that is un treated. Further, Ms. Shannon is in denial about Asthma diagnoses. In furtherance of

these objectives defendants engaged in, without limitation, the following:

a.   PALMER told lies to SIMI VALLEY POLICE DEPARTMENT to encourage that they report to Child Protective Services. Plaintiffs are informed and believe, and thereupon allege, that these lies included, without limitation, telling Officer's that plaintiff W.W. was a diagnosed asthmatic and that there was no inhaler at all in possession to treat his symptoms. PALMER knew such information to be false. Plaintiffs are informed and believe, and thereupon alleged, that the intention of PALMER was that W.W. be removed, even though based on falsehoods.

b.   Plaintiffs are informed and believe there was other similar conduct. However, Plaintiffs require discovery to fully ascertain the facts.

82.  Plaintiffs are informed and believe, and thereupon allege, that Defendants, each of them, engaged in the conduct alleged in the immediately preceding

paragraph knowing, or at the very least they should have known, it would set in motion a series of act that it would result in W.W. being removed from by CPS and the SIMI VALLEY POLICE DEPARTMENT. In fact, said lies did result in W.W. being removed from his parent. The lies, therefore, were carefully calculated to result in W.W. being removed. In fact, said lies did result in W.W. being removed from his parent – even though the allegations were baseless. This constituted unwarranted state interference.

83. Plaintiffs are informed and believe that defendants knew, or should have know, this because, without limitation: 1) they had sufficient experience with how CPS and the POLICE worked from, without limitation, their prior observations and/or experiences with such matters; 2) they had engaged in similar conduct with previously; and/or, 3) their general knowledge and experience in the area.

84. Thus, while these defendants did not personally make the decision that W.W. be removed, their lies to the police and others set in motion a series of acts by others

which the INDIVIDUAL DISTRICT DEFENDANTs knew or

reasonably should have known would cause others to inflict

the constitutional injury. Here, that injury was that

wrongful taking of W.W. in a fashion that violated the

constitutional protections and rights applicable to

familial relations. This injury included, without

limitation, that the INDIVIDUAL DISTRICT DEFENDANTs knew,

or should have known, W.W. would be taken by CPS

wrongfully and forcing the plaintiffs to have to fight to

seek his return. W.W. was returned; and the charges

against the plaintiffs were devoid of merit (and based on

the lies and specious allegations). Accordingly, the

INDIVIDUAL DISTRICT DEFENDANTS violated the right to

familial association guaranteed under, without limitation,

the First, Fourth and Fourteenth Amendment, as well as

plaintiffs' due process rights regarding the family

relationship, which were "clearly established." The

INDIVIDUAL DISTRICT DEFENDANTs' lies evidenced an intent

that W.W. be wrongfully taken.

85. Further, the injury, as intended by the INDIVIDUAL DISTRICT DEFENDANTs, violated the right to familial association guaranteed under, without limitation, the First, Fourth and Fourteenth Amendment, as well as plaintiffs' due process rights regarding the family relationship, which were "clearly established." These actions by the DISTRICT DEFENDANTS constituted unwarranted state interference effected "for the purpose of oppression.

86. As a direct and proximate cause of said violations, Plaintiffs have suffered damage as according to proof at trial, including, without limitation, hiring lawyers to clear their name and, lost wages, treatment and other professional costs, and medical treatments related to said conduct.

87. As a direct and proximate result of these DEFENDANTS' actions, minor Plaintiffs has suffered, and will continue to suffer permanent physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial.

88. As a direct and proximate result of the acts and omissions of the defendants, and each of them, as aforesaid, plaintiff(s) have been required to hire and retain the services of medical doctors, physicians, hospitals and other practitioners and will be required to do so, indefinitely in the future, for the proper care and treatment of injuries in amounts presently unascertained; plaintiff(s) prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

89.   As a further direct and proximate result of the acts and omissions of the defendants and each of them, as aforesaid, plaintiff(s) sustained wage loss and a future loss of earning capacity, in amounts presently unascertained; plaintiff(s) prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

90.   These Individual County Defendants, and each of them, are individuals who were at all relevant times acting under color of state law in doing the things

alleged herein above Further, on information and belief, the INDIVIDUAL DISTRICT DEFENDANTS and each of them, acted with malice and with the intent to cause injury to Plaintiffs, and each of them, or acted with a willful and conscious disregard of the rights, as evidenced in large part by the pattern of telling lies as alleged above, of Plaintiffs in a despicable, vile, and contemptible manner. Therefore, Plaintiffs are entitled to an award of punitive damages only against the individual defendants (as opposed to the agency or municipality) for the purpose of punishing DEFENDANTS, and to deter them and others from such conduct in the future.

### IV

### SECOND CAUSE OF ACTION FOR VIOLATION OF 42 U.S.C. §1983 – MONELL-RELATED CLAIMS

*(By All Plaintiffs Against COUNTY, LINDA STEVENSON and DISTRICT DEFENDANT)*

91.   Plaintiffs re-allege, and to the extent applicable, incorporates by reference herein as if set

forth in full, all paragraphs from the Common Allegations above.

## COUNT ONE

*(By all Plaintiffs Against COUNTY DEFENDANTS & LINDA STEVENSON)*

92.   Defendant COUNTY, including through its entities, established and/or followed policies, procedures, customs, and/or practices (hereinafter referred to collectively as "policy" or "policies") which policies were the moving force behind the violations of Plaintiffs' constitutional rights, including, without limitation, those arising under the First, Fourth and Fourteenth Amendments of the U.S. Constitution and/or the Cal. Const., art. I, § 1 § 1, by and through, but not limited to, the following policies, practices, customs and/or procedures:

a. The policy of detaining and/or removing children from their family and homes without exigent circumstances (i.e., imminent danger of

serious physical injury), court order and/or consent;

b. The policy of removing children from their family and their homes without first obtaining a warrant when no exigency exists;

c. The policy of examining children without exigency, need, or proper court order, and without the presence and/or consent of their parent or guardian;

d. The policy of removing and detaining children, and continuing to detain them for an unreasonable period after any alleged basis for detention is negated;

e. The policy of using trickery, duress, fabrication and/or false testimony and/or evidence, and failure to disclose exculpatory evidence, in preparing and presenting reports and court documents to the Court, causing an interference with the Plaintiffs' rights, including those as to familial relations;

f. By acting with deliberate indifference in implementing a policy of inadequate training, and/or by failing to train its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the First, Fourth and Fourteenth Amendments, when performing actions related to child abuse and dependency type proceedings;

g. By acting with deliberate indifference in implementing a policy of inadequate supervision, and/or by failing to adequately supervise, including, without limitation, train, oversee, and/or discipline, its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including those under the First, Fourth and Fourteenth Amendments, when performing actions related to child abuse and dependency type proceedings; and/or,

h. The policy of making false allegations in a
Juvenile Dependency Petitions, i.e. alleging that
a parent has failed to protect a child under
Welfare and Institutions Code §300(b), where
there is no evidentiary basis to support the
charge.

(This list is not exhaustive due to the pending
nature of discovery and the privileged and protected
records of investigative and juvenile dependency type
proceedings, all of which have not yet been received by
Plaintiffs. Plaintiffs reserve their right to amend this
pleading as more information becomes available).

93.   COUNTY, including by and through its entities,
breached its duties and obligations to Plaintiffs
including but not limited to, failing to establish,
implement and follow the correct and proper Constitutional
policies, procedures, customs and practices; by failing to
properly select, supervise, train, control, and review its
agents and employees as to their compliance with
Constitutional safeguards with deliberate indifference;

and by knowingly, or with deliberate indifference, permitting the SOCIAL WORKER DEFENDANTS and SHERIFF DEFENDANTS to engage in the unlawful and unconstitutional conduct as herein alleged.

94.   Further, and in the alternative, defendant ratified such policies. Such decision was the product of a conscious, affirmative choice to ratify the conduct in question.

95.   COUNTY knew, or should have known, that by breaching the above-mentioned duties and obligations that it was foreseeable that it would, and did, cause Plaintiffs to be injured and damaged by its wrongful policies and acts as alleged herein, and that such breaches occurred in contravention of public policy and its legal duties and obligations to Plaintiffs; and that such policies, practices, customs and procedures were the moving force behind the constitutional violations alleged herein above.

96.   These actions, and/or inactions, of COUNTY are the direct and proximate cause of Plaintiffs' injuries, as

alleged herein; and as a result, Plaintiffs have sustained general and special damages, to an extent and in an amount to be proven at trial. In addition, Plaintiffs have incurred, and will continue to incur, attorneys fees, costs and expenses, including those as authorized by 42 U.S.C. §1988, to an extent and in an amount subject to proof at trial.

97.    The actions of COUNTY, and each of them, are the legal and proximate cause of Plaintiff(s), to sustain the damages and injuries claimed herein associated with the removal of the minor Plaintiff from his Plaintiff Parents' custody, and injuries and damages suffered subsequently thereafter, which have been ongoing and continuous since the date of the minor Plaintiff's removal from his Plaintiff Parents caused through the present, including without limitation severe and permanent personal, emotional and physical injuries, suffering financial damage in amounts presently unknown to the Plaintiff(s), which are expected to continue into the future, subject to proof at trial.

98.   As a direct and proximate result of the acts and omissions of the defendants, and each of them, as aforesaid, plaintiff(s) have been required to hire and retain the services attorneys, medical doctors, physicians, hospitals and other practitioners and will be required to do so, indefinitely in the future, for the proper care and treatment of injuries in amounts presently unascertained; plaintiff(s) prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

99.   As a further direct and proximate result of the acts and omissions of the defendants and each of them, as aforesaid, plaintiff(s) sustained wage loss and a future loss of earning capacity, in amounts presently unascertained; plaintiff(s) prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

**COUNT TWO**

(By all Plaintiffs Against DISTRICT DEFENDANTS)

100. The DISTRICT, established and/or followed policies, procedures, customs, and/or practices (hereinafter referred to collectively as "policy" or "policies") which policies were the moving force behind the violations of Plaintiffs' constitutional rights, including those arising under the First, Fourth and Fourteenth Amendments, by and through, but not limited to, the following policies, practices, customs and/or procedures:

a. The policy of, as a pattern and practice, discouraging parents of children with special needs from availing themselves of their rights under law to have the District seek to accommodate such special needs.

b. By acting with deliberate indifference in implementing a policy of inadequate training, and/or by failing to train, adequately supervise, and/or monitor, its officers, agents, employees and state actors, in providing the constitutional protections guaranteed to individuals, including

- 65 -
COMPLAINT FOR DAMAGES

those under, with limitation, the First, Fourth
and Fourteenth Amendments, when performing
actions related to special needs children and
their parents' aforementioned constitutional
protections, including the privacy rights of such
parents and/or children; the right to be free
from retaliation of such parents and children for
exercising rights protected under the
constitutional including the right to petition
government for redress of grievances and/or or
the exercise their First Amendment rights; and/
or,.

c. By acting with deliberate indifference in
implementing a policy of inadequate training,
and/or by failing to discipline its officers,
agents, employees and state actors, for
violations of the constitutional protections
guaranteed to individuals, including those under,
with limitation, the First, Fourth and Fourteenth
Amendments, when performing actions related to

special needs children and their parents'
aforementioned constitutional protections,
including the privacy rights of such parents and/
or children; the right to be free from
retaliation of such parents and children for
exercising rights protected under the
constitutional including the right to petition
government for redress of grievances and/or or
the exercise their First Amendment rights.

(This list is not exhaustive due to the pending
nature of discovery and the privileged and protected
records of investigative and juvenile dependency type
proceedings, all of which have not yet been received by
Plaintiffs. Plaintiffs reserve their right to amend this
pleading as more information becomes available).

101. DISTRICT breached its duties and obligations to
Plaintiffs including but not limited to, failing to
establish, implement and follow the correct and proper
Constitutional policies, procedures, customs and
practices; by failing to properly select, supervise,

train, control, and review its agents and employees as to their compliance with Constitutional safeguards with deliberate indifference; and by knowingly, or with deliberate indifference, permitting its teachers, administrators, and other staff, and DOES 1 through 50, inclusive, to engage in the unlawful and unconstitutional conduct as herein alleged.

102. DEFENDANT knew, or should have known, that by breaching the above-mentioned duties and obligations that it was foreseeable that it would, and did, cause Plaintiffs to be injured and damaged by its wrongful policies and acts as alleged herein, and that such breaches occurred in contravention of public policy and its legal duties and obligations to Plaintiffs; and that such policies, practices, customs and procedures were the moving force behind the constitutional violations alleged herein above.

103. Further, and in the alternative, defendant ratified such policies. Such decision was the product of a

1  conscious, affirmative choice to ratify the conduct in

2  question.

4      104.  These actions, and/or inactions, of DEFENDANT

5  are the direct and proximate cause of Plaintiffs'

7  injuries, as alleged herein; and as a result, Plaintiffs

8  have sustained general and special damages, to an extent

9  and in an amount to be proven at trial. In addition,

10  Plaintiffs have incurred, and will continue to incur,

11  attorneys fees, costs and expenses, including those as

13  authorized by 42 U.S.C. §1988, to an extent and in an

15  amount subject to proof at trial.

16     105. The actions of DEFENDANTS, and each of them, are

18  the legal and proximate cause of Plaintiff(s), to sustain

19  the damages and injuries claimed herein associated with

20  the removal of the minor Plaintiff from his Plaintiff

22  Parents' custody, and injuries and damages suffered

23  subsequently thereafter, which have been ongoing and

25  continuous since the date of the minor Plaintiff's removal

26  from his Plaintiff Parents through the present, including

27  without limitation severe and permanent personal,

emotional and physical injuries, suffering financial damage in amounts presently unknown to the Plaintiff(s), which are expected to continue into the future, subject to proof at trial.

106. As a direct and proximate result of the acts and omissions of the defendants, and each of them, as aforesaid, plaintiff(s) have been required to hire and retain the services of medical doctors, physicians, hospitals and other practitioners and will be required to do so, indefinitely in the future, for the proper care and treatment of injuries in amounts presently unascertained; plaintiff(s) prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

107. As a further direct and proximate result of the acts and omissions of the defendants and each of them, as aforesaid, plaintiff(s) sustained wage loss and a future loss of earning capacity, in amounts presently unascertained; plaintiff(s) prays leave when said amounts

1  are ascertained, they may be permitted to amend and insert

2  the same herein with appropriate allegations.

**V**

**THIRD CAUSE OF ACTION FOR VIOLATION OF STATE CIVIL RIGHTS**

*(By All Plaintiffs Against Specified Defendants)*

108. Plaintiffs re-allege, and to the extent applicable, incorporate by reference herein as if set forth in full, all paragraphs from the Common Allegations above.

109. Pursuant to Gov. Code, § 815.2, sub. (a), an arm of government, including the COUNTY defendants, are liable for acts and omissions of its employees under the doctrine of respondent superior to the same extent as a private employer. Under Gov. Code, § 815.2, sub. (b), the government entity defendants are immune from liability if, and only if, the targeted employee is immune.

**COUNT ONE (CAL. CIVIL CODE §52.1)**

*(By All Plaintiffs Against DISTRICT & PALMER)*

110. The Ordinance, on its face and as applied or threatened to be applied, interferes with plaintiff's

- 71 -
**COMPLAINT FOR DAMAGES**

exercise of the right to free speech and to assembly guaranteed by the First Amendment of the United States Constitution and Article I, §2 of the California Constitution, his right to be free from unlawful search and seizure guaranteed by the Fifth and Fourteenth Amendments to the United States Constitution and Article I, §13 of the California Constitution, his rights under California's Unruh Act to be free from unlawful discrimination, and his equal protection rights under the 14th Amendment to the United States Constitution. This was and is a violation of California Civil Code §52.1. If a person or persons, whether or not acting under color of law, interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with the exercise or enjoyment by any individual or individuals of rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate

equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured. An action brought by the Attorney General, any district attorney, or any city attorney may also seek a civil penalty of twenty-five thousand dollars ($25,000). If this civil penalty is requested, it shall be assessed individually against each person who is determined to have violated this section and the penalty shall be awarded to each individual whose rights under this section are determined to have been violated.

111. Any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, as described in subdivision (a), may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages, including, but not limited to, damages under Section 52, injunctive relief, and other appropriate equitable relief to protect

the peaceable exercise or enjoyment of the right or rights secured.

### COUNT TWO (CAL. CIVIL CODE §51.7 & §52.1)

*(By All Plaintiffs Against County,* & THORNE, MAYERNIK, CONSTANTINE, OFFICER ANDERSON, and OFFICER SAVAGE)

112. Individual County Defendants THORNE, MAYERNIK, CONSTANTINE, OFFICER ANDERSON, and OFFICER SAVAGE, and each of them, by the use of threats, intimidation, and coercion, (or attempts to threaten, intimidate, or coerce within the meaning of Civil Code section 51.7(a)), interfered with Plaintiffs' exercise and enjoyment of the rights secured by the Constitution and laws of the State of California, and their right to be free from intimidation or the threat of violence within the meaning of Civil Code sections 51 (b) and (e).

113. These Individual County Defendants, and each of them, are individuals who were at all relevant times acting under color of state law in doing the things alleged herein above. Moreover, each of the Individual Defendants, maliciously participated in, maliciously

conspired with, approved of, and/or aided and abetted the conduct of the remaining Individual County Defendants.

114. As a result of Individual County Defendants' conduct, the said Defendants, and each of them, by the use of threats, intimidation, and coercion, (or attempts to threaten, intimidate, or coerce), interfered with Plaintiffs' exercise and enjoyment of the rights secured by the United States Constitution, the Constitution and laws of the State of California, and their rights under California law.

115. In addition to the foregoing, as set forth above, the Individual Defendants, and each of them, wrongfully seized W.W. in violation of the Fourth Amendment of the U.S. Constitution; they unlawfully removed and detained W.W.; then, continued to detain W.W. after any alleged basis for detention had been negated. The Individual County Defendants also procured false testimony, fabricated evidence, and refused to disclose exculpatory evidence in preparing and presenting reports and documents to the Court in relation to dependency

proceedings, all in violation of the right to familial association under the Due Process Clause of the Fourteenth Amendment.

116. As the direct and proximate result of these Individual Defendants' actions, Plaintiffs have suffered, and will continue to suffer, physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial.

117. Defendant County is vicariously responsible for the conduct of the Individual Defendants under California Government Code section 815.2, and other applicable statutory and case law. The Individual Defendants are agents and employees of County acting within the scope of their employment and with County's permission and consent.

118. In doing the acts alleged in this Complaint, DEFENDANTS, and each of them, knew or should have known that their actions would, or were likely to, injure and damage Plaintiffs. Plaintiffs are informed and believe, and thereon allege, that the Individual Defendants, and each of them, intended to cause injury and damage to

Plaintiffs, and/or acted with a willful and conscious disregard of Plaintiffs' rights in doing the things alleged herein above, thus entitling Plaintiffs to recover punitive damages as against said Individual Defendants pursuant to Cal. Civil Code §52.

119. The rights violated by DEFENDANTS, and each of them, are protected by California Civil Code sections and 52.1. Pursuant to California Civil Code 52 Plaintiffs are entitled to compensatory and punitive damages, injunctive relief, statutory civil penalty (including $25,000.00 as to each individual defendant) and attorneys' fees, as provided for by the laws and the Constitution of the State of California and are requested herein.

120. As alleged supra, the Individual County Defendants, and each of them, by the use of threats, intimidation, and coercion, (or attempts to threaten, intimidate, or coerce), interfered with Plaintiffs' exercise and enjoyment of the rights secured by the United States Constitution and other Federal laws, the Constitution and laws of the State of California, and

their rights under California Government Code Section 820.21, and California Civil Code sections 52.1. Such conduct includes retaliation for seeking reasonable accommodations for W.W. conditions, invasion of privacy, and publication of private facts to the other families at School, among other things.

121.  The rights violated by DEFENDANTS and each of them, are protected by California Civil Code sections 51.7 and 52.1. Pursuant to California Civil Code 52 Plaintiffs are entitled to compensatory and punitive damages, injunctive relief, statutory civil penalty (including $25,000.00 as to each individual defendant) and attorneys' fees, as provided for by the laws and the Constitution of the State of California and are requested herein.

122.  Defendant government bodies are vicariously responsible for the conduct of their respective employees under California Government Code section 815.2, and other applicable statutory and case law.

123.  As the direct and proximate result of these DEFENDANTS' actions, Plaintiffs have suffered, and will

continue to suffer, physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial.

124. The actions of DEFENDANTS, and each of them, are the legal and proximate cause of Plaintiffs, to sustain the damages and injuries claimed herein associated with the removal of the minor Plaintiff from his parents' custody, and injuries and damages suffered subsequently thereafter, which have been ongoing and continuous since the date of the minor Plaintiff's removal from his parents through the present, including without limitation severe and permanent personal, emotional and physical injuries, suffering financial damage in amounts presently unknown to the Plaintiffs, which are expected to continue into the future, subject to proof at trial.

125. As a direct and proximate result of the acts and omissions of the defendants, and each of them, as aforesaid, plaintiffs have been required to hire and retain the services of medical doctors, physicians, hospitals and other practitioners and will be required to

do so, indefinitely in the future, for the proper care and treatment of injuries in amounts presently unascertained; plaintiffs pray leave to amend and insert the same herein when ascertained.

126. As a further direct and proximate result of the acts and omissions of the defendants and each of them, as aforesaid, plaintiffs sustained wage loss and a future loss of earning capacity, in amounts presently unascertained; plaintiffs pray leave to amend and insert the same herein when ascertained.

## VI

## FOURTH CAUSE OF ACTION FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

(By All Plaintiffs Against DISTRICT DEFENDANTS PALMER, ROBERTS, COUNTY DEFENDANTS And OFFICER ANDERSON; & OFFICER SAVAGE; LINDA STEVENSON)

*127.* Plaintiffs re-allege, and to the extent applicable, incorporate by reference herein as if set forth in full, all paragraphs from the Common Allegations above.

128. As the direct and proximate result of the below the defendants extreme and outrageous conduct as alleged below in each Count, Plaintiffs suffered extreme emotional and physical distress, including, but not limited to, fright, nervousness, sleeplessness, anxiety, worry, mortification, shock, humiliation and indignity to an extent and in an amount subject to proof at trial as alleged in each Count below. The extreme and outrageous conduct by the defendants, each one, alleged herein, as alleged below, was done with the intention of causing, or with reckless disregard of the probability of causing, extreme emotional distress.

### COUNT ONE

(By KAWAMI Against PALMER & ROBERTS)

129. Plaintiffs are informed and believe, and thereupon allege, that PALMER, the Justin Elementary School Superintendent/Principal, was responsible for the execution at her school of a policy to discourage African American children from asserting their rights under various federal and state laws. Plaintiffs are informed

and believe, and thereupon allege, PALMER sought discourage the students and their parents from asserting any rights. If that failed, the DISTRICT, by PALMER, retaliated against such families.

130.     Plaintiffs are informed and believe, and thereupon allege, PALMER sought to discourage the students and their parents from asserting any rights. If that failed, the DISTRICT, by PALMER, retaliated against such families. In furtherance of these objectives PALMER & ROBERTS told lies, to Doctors and Police to encourage that they report to CPS. Plaintiffs are informed and believe, and thereupon alleged, that the intention of PALMER & ROBERTS was that W.W. be removed, even though based on falsehoods. In fact, said lies did result in W.W. being removed from his parent - even though the allegations were baseless.

131. PALMER & ROBERTS engaged in the above-mentioned extreme, outrageous, unlawful and unprivileged conduct. The extreme and outrageous conduct by the PALMER & ROBERTS alleged herein, was done with the intention of causing, or

with reckless disregard of the probability of causing,

such extreme emotional distress.

132. As the direct and proximate result of PALMER &
ROBERTS's extreme and outrageous conduct, Plaintiffs
suffered extreme emotional and physical distress,
including, but not limited to, fright, nervousness,
sleeplessness, anxiety, worry, mortification, shock,
humiliation and indignity to an extent and in an amount
subject to proof at trial.

133. The actions of PALMER & ROBERTS are the legal
and proximate cause of Plaintiffs' harm according to proof
at trial.

134. As a direct and proximate result of the acts and
omissions of the defendant PALMER & ROBERTS, plaintiff(s)
have been required to hire and retain the services of
medical doctors, physicians, hospitals, lawyers, and other
practitioners and will be required to do so, indefinitely
in the future, for the proper care and treatment of
injuries in amounts presently unascertained; plaintiff(s)
prays leave when said amounts are ascertained, they may be

1  permitted to amend and insert the same herein with
2  appropriate allegations.
3
4      135. As a further direct and proximate result of the
5  acts and omissions of the defendant plaintiff(s) sustained
6  wage loss and a future loss of earning capacity, in
7
8  amounts presently unascertained; plaintiff(s) prays leave
9  when said amounts are ascertained, they may be permitted
10 to amend and insert the same herein with appropriate
11
12 allegations.
13
14     136. Plaintiffs are informed and believe that
15 DEFENDANT PALMER & ROBERTS acted knowingly and willfully,
16 with malice and oppression, and with the intent to harm
17
18 Plaintiffs. Therefore, Plaintiffs are entitled to an award
19 of punitive damages for the purpose of punishing said
20 DEFENDANTs and to deter them and others from such conduct
21
22 in the future.
23                        **COUNT TWO**
24
25     (By W.W. Against DEFENDANTS PALMER & ROBERTS)
26     137. Plaintiffs are informed and believe, and
27
28 thereupon allege, that PALMER, the Justin Elementary

---

- 84 -
**COMPLAINT FOR DAMAGES**

School Superintendent/Principal, was responsible for the execution at her school of a policy to discourage African American children from asserting their rights under various federal and state laws. Plaintiffs are informed and believe, and thereupon allege, PALMER sought discourage the students and their parents from asserting any rights. If that failed, the DISTRICT, by PALMER, retaliated against such families.

138. Plaintiffs are informed and believe, and thereupon allege, PALMER sought to discourage the students and their parents from asserting any rights. If that failed, the DISTRICT, by PALMER, retaliated against such families. In furtherance of these objectives PALMER & ROBERTS told lies, to Doctors and Police to encourage that they report to CPS. Plaintiffs are informed and believe, and thereupon alleged, that the intention of PALMER & ROBERTS was that W.W. be removed, even though based on falsehoods. In fact, said lies did result in W.W. being removed from his parent – even though the allegations were baseless.

139. PALMER & ROBERTS engaged in the above-mentioned extreme, outrageous, unlawful and unprivileged conduct. The extreme and outrageous conduct by the PALMER & ROBERTS alleged herein, was done with the intention of causing, or with reckless disregard of the probability of causing, such extreme emotional distress.

140. As the direct and proximate result of PALMER & ROBERTS's extreme and outrageous conduct, Plaintiffs suffered extreme emotional and physical distress, including, but not limited to, fright, nervousness, sleeplessness, anxiety, worry, mortification, shock, humiliation and indignity to an extent and in an amount subject to proof at trial.

141. The actions of PALMER & ROBERTS are the legal and proximate cause of Plaintiffs' harm according to proof at trial.

142. As a direct and proximate result of the acts and omissions of the defendant PALMER & ROBERTS, plaintiff(s) have been required to hire and retain the services of medical doctors, physicians, hospitals, lawyers, and other

practitioners and will be required to do so, indefinitely in the future, for the proper care and treatment of injuries in amounts presently unascertained; plaintiff(s) prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

143. As a further direct and proximate result of the acts and omissions of the defendant plaintiff(s) sustained wage loss and a future loss of earning capacity, in amounts presently unascertained; plaintiff(s) prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

144. Plaintiffs are informed and believe that DEFENDANT PALMER & ROBERTS acted knowingly and willfully, with malice and oppression, and with the intent to harm Plaintiffs. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing said DEFENDANTs and to deter them and others from such conduct in the future.

## COUNT THREE

(By KAWAMI Against THORNE, MAYERNIK and CONSTANTINE)

145. Govt. Code § 820.21, entitled " Tort liability of specified public employees," provides in part:

> "(a) Notwithstanding any other provision of the law, the civil immunity of juvenile court social workers, child protection workers, and other public employees authorized to initiate or conduct investigations or proceedings pursuant to Chapter 2 (commencing with Section 200) of Part 1 of Division 2 of the Welfare and Institutions Code shall not extend to any of the following, if committed with malice:
>
> (1)   Perjury.
>
> (2)   Fabrication of evidence.
>
> (3)   Failure to disclose known exculpatory evidence. . . (b) As used in this section, "malice" means conduct that is intended by the person described in subdivision (a) to cause injury to the plaintiff or despicable

conduct that is carried on by the person described in subdivision (a) with a willful and conscious disregard of the rights or safety of others."

146. DEFENDANTs THORNE, MAYERNIK and CONSTANTINE were employees of CPS. THORNE, MAYERNIK and CONSTANTINE investigated and prepared reports for filing with the Ventura County Superior Court, which accused Ms. Shannon of causing or potentially causing serious physical harm to W.W., failing to protect W.W., causing serious emotional damage to W.W. and that W.W. was left without means of support. Based upon the inaccurate, false, and uninvestigated statements in those reports by THORNE, MAYERNIK and CONSTANTINE, CPS supported the complaint against Ms. Shannon without further investigation and with the knowledge that its claims were false and unsupported by any evidence and by suppressing exculpatory evidence. DEFENDANTs THORNE, MAYERNIK and CONSTANTINE each of them, participated in, conspired with, approved of, and/or aided and abetted the conduct of the other.

147. Liability for intentional infliction of emotional distress may also be predicated on participation in a conspiracy to inflict such distress. When the existence of a conspiracy is established, all defendants shown to have joined in the conspiracy will be liable for the intentional infliction of emotional distress by the acts of the conspirators, regardless of whether they personally committed any of them.

148. As the direct and proximate result of the extreme and outrageous conduct alleged herein, Plaintiffs suffered extreme emotional and physical distress, including, but not limited to, fright, nervousness, sleeplessness, anxiety, worry, mortification, shock, humiliation and indignity to an extent and in an amount subject to proof at trial. The extreme and outrageous conduct by DEFENDANTS THORNE, MAYERNIK and CONSTANTINE, each of them, alleged herein, was done with the intention of causing, or with reckless disregard of the probability of causing, such extreme emotional distress.

149. The actions of DEFENDANTS are the legal and proximate cause of Plaintiffs harm according to proof at trial.

150. As a direct and proximate result of the acts and omissions of the defendants, plaintiffs have been required to hire and retain the services of medical doctors, physicians, hospitals and other practitioners and will be required to do so, indefinitely in the future, for the proper care and treatment of injuries in amounts presently unascertained; plaintiffs prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

## COUNT FOUR

(By W.W. Against THORNE, MAYERNIK and CONSTANTINE)

151. Plaintiff re-alleges and incorporates by reference herein as if set forth in full, all paragraphs from COUNT FOUR of the FOURTH Cause of Action.

152. W.W. experienced the horror and fear of being separated from his parents during this ordeal at his tender young age, the indignity of medical examinations

without the support and comfort of his parents; the horror and fear of being removed form his house.

153. As the direct and proximate result of the extreme and outrageous conduct alleged herein, Plaintiff suffered extreme emotional and physical distress, including, but not limited to, fright, nervousness, sleeplessness, anxiety, worry, mortification, shock, humiliation and indignity to an extent and in an amount subject to proof at trial. The extreme and outrageous conduct by DEFENDANTS THORNE, MAYERNIK and CONSTANTINE, each of them, alleged herein, was done with the intention of causing, or with reckless disregard of the probability of causing, such extreme emotional distress.

154. The actions of DEFENDANTS are the legal and proximate cause of Plaintiff harm according to proof at trial.

155. As a direct and proximate result of the acts and omissions of the defendants, plaintiff have been required to hire and retain the services of medical doctors, physicians, hospitals and other practitioners and will be

1  required to do so, indefinitely in the future, for the

2  proper care and treatment of injuries in amounts presently

3

4  unascertained; plaintiff prays leave when said amounts are

5  ascertained, they may be permitted to amend and insert the

6

7  same herein with appropriate allegations.

8  **COUNT FIVE**

9  (By KAWAMI Against OFFICER ANDERSON AND SAVAGE)

10

11  156. Notwithstanding the foregoing, OFFICER ANDERSON

12  AND SAVAGE prepared and/or participated in preparing in a

13  substantial way a Juvenile Dependency Petition filed in

14

15  the Superior Court of California, County of Ventura,

16  Juvenile Court that contained knowingly false information

17  and purposely suppressed, and failed to include,

18

19  exculpatory evidence. Said defendants, and each of them,

20  participated in the fabrication of evidence with the

21

22  intent to submit that false evidence to the Court.

23  Thereafter, on September 26, 2012, Social Studies and

24  Supplemental Reports that related to the plaintiffs

25

26  contained knowingly false information and purposely

27

28

suppressed exculpatory evidence. Under Govt. Code § 820.21, such conduct is not privileged.

157.  As the direct and proximate result of the extreme and outrageous conduct alleged herein, Plaintiffs suffered extreme emotional and physical distress, including, but not limited to, fright, nervousness, sleeplessness, anxiety, worry, mortification, shock, humiliation and indignity to an extent and in an amount subject to proof at trial. The extreme and outrageous conduct by OFFICER ANDERSON AND SAVAGE alleged herein, was done with the intention of causing, or with reckless disregard of the probability of causing, such extreme emotional distress.

158.  The actions of OFFICER ANDERSON AND SAVAGE are the legal and proximate cause of Plaintiffs harm according to proof at trial.

159. As a direct and proximate result of the acts and omissions of the defendant, plaintiff(s) have been required to hire and retain the services of medical doctors, physicians, hospitals and other practitioners and

will be required to do so, indefinitely in the future, for the proper care and treatment of injuries in amounts presently unascertained; plaintiff(s) prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

160. As a further direct and proximate result of the acts and omissions of the defendant plaintiff(s) sustained wage loss and a future loss of earning capacity, in amounts presently unascertained; plaintiff(s) prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

161.   Plaintiffs are informed and believe that OFFICER ANDERSON AND SAVAGE acted knowingly and willfully, with malice and oppression, and with the intent to harm Plaintiffs. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing said defendant and to deter them and others from such conduct in the future.

## VII

## FIFTH CAUSE OF ACTION FOR FALSE IMPRISONMENT

(By Plaintiff W.W. Against COUNTY DEFENDANTS)

162.  Plaintiff re-alleges, and to the extent applicable, incorporates by reference herein as if set forth in full, all paragraphs from the Common Allegations above.

163.  Gov. Code § 820.4, specifically denies immunity and imparts liability upon a public employee for a claim of false imprisonment.

164.  In the absence of exigent circumstances, and without any evidence to suggest that W.W. was in imminent danger of suffering serious bodily injury at the hands of Plaintiff Parent, COUNTY DEFENDANTS, and each of them, wrongfully removed and detained minor Plaintiff W.W. Each of the individual POLICE and SOCIAL WORKER DEFENDANTS participated in, conspired with, approved of, and/or aided and abetted the conduct of the remaining COUNTY DEFENDANTS.

165.  DEFENDANTS, and each of them, intentionally deprived minor Plaintiff W.W. of his freedom of movement by the use of physical barriers, menace, fraud, deceit, and unreasonable duress, without evidence of any imminent danger of serious physical injury at the hands of his parents, without court order, and without just or reasonable cause. In order to perpetuate and continue the unlawful detention of W.W., Defendants fabricated evidence, suppressed exculpatory evidence, and committed perjury to hide the true facts thereby depriving W.W. of his personal and civil liberties.

166.  At no time did minor Plaintiff W.W. consent, constructively or otherwise, to such deprivation and detainment, nor was legal consent obtained by law, by court order, or from minor Plaintiffs' parents.

167.  As a direct and proximate result of these DEFENDANTS' actions, minor Plaintiff W.W. has suffered, and will continue to suffer permanent physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial.

168. The actions of DEFENDANTS, and each of them, are the legal and proximate cause of Plaintiff(s), to sustain the damages and injuries claimed herein associated with the removal of the minor Plaintiff from his Plaintiff Parents' custody, and injuries and damages suffered subsequently thereafter, which have been ongoing and continuous since the date of the minor Plaintiff's removal from his Plaintiff Parents through the present, including without limitation severe and permanent personal, emotional and physical injuries, suffering financial damage in amounts presently unknown to the Plaintiff(s), which are expected to continue into the future, subject to proof at trial.

169. As a direct and proximate result of the acts and omissions of the defendants, and each of them, as aforesaid, plaintiff(s) have been required to hire and retain the services of medical doctors, physicians, hospitals and other practitioners and will be required to do so, indefinitely in the future, for the proper care and treatment of injuries in amounts presently unascertained;

plaintiff(s) prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

170. As a further direct and proximate result of the acts and omissions of the defendants and each of them, as aforesaid, plaintiff(s) sustained wage loss and a future loss of earning capacity, in amounts presently unascertained; plaintiff(s) prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

171. Defendant COUNTY and its entities are vicariously responsible for the conduct of their respective employee defendants herein under Government Code Section 815.2(a) and applicable other statutory and case law.

172. In doing the things alleged herein above, INDIVIDUAL COUNTY DEFENDANTS and each of them, acted with malice and with the intent to cause injury to minor Plaintiffs W.W., or acted with a willful and conscious disregard of the rights of Plaintiff in a despicable,

vile, and contemptible manner. Therefore, Plaintiff is entitled to an award of punitive damages for the purpose of punishing INDIVIDUAL COUNTY DEFENDANTS, and to deter them and others from such conduct in the future, as according to proof at trial.

## VIII

### SIXTH CAUSE OF ACTION FOR INVASION OF PRIVACY

#### (By All Plaintiffs Against all Defendants)

173.   Plaintiffs re-allege, and to the extent applicable, incorporate by reference herein as if set forth in full, all paragraphs from the Common Allegations above.

### COUNT ONE

#### (By Plaintiffs Against COUNTY DEFENDANTS)

174.   COUNTY DEFENDANTS, or their agents, physically and intentionally entered both the Plaintiffs' home, school, and private doctor's office. The Plaintiffs have a reasonable expectation of seclusion and privacy in their own home and within a private doctor's office. The DEFENDANTS did not have permission to enter either the

Plaintiff's home or private doctor's office, or obtained such permission, if in fact it was given, by use of force or threats and intimidation.

175.   Said intrusion was malicious and unprivileged. Said conduct violated plaintiffs' right to privacy under, without limitation, Cal. Const., art. I, § 1 § 1 that provides, in a section entitled "inalienable rights" that "[a]ll people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and privacy." Further, the said conduct violated the Fourth Amendment and the Due Process Clause of the Fourteenth Amendment, U.S. Constitution.

176.   DEFENDANTS, and each of them, intentionally and maliciously intruded upon the Plaintiffs' privacy without a warrant and in the absence of exigent circumstances, and without any evidence to suggest that W.W. was in imminent danger of suffering serious bodily injury at the hands of either Parent Plaintiff.

177.   The COUNTY is vicariously responsible for the conduct of its employees, and other agents and staff, under Government Code Section 815.2 and applicable other statutory and case law. Further, Plaintiffs are informed and believe, and thereupon alleges, that at all times said actions by the employees, agents or other staff was authorized by the COUNTY and/or ratified by the COUNTY.

178.   As the direct and proximate result of these DEFENDANTS' actions, Plaintiffs have suffered, and will continue to suffer, physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial.

179.   The actions of DEFENDANTS, and each of them, are the legal and proximate cause of Plaintiff(s), to sustain the damages and injuries claimed herein associated with the removal of the minor Plaintiff from his Plaintiff Parents' custody, and injuries and damages suffered subsequently thereafter, which have been ongoing and continuous since the date of the minor Plaintiff's removal from his Plaintiff Parents through the present, including

without limitation severe and permanent personal, emotional and physical injuries, suffering financial damage in amounts presently unknown to the Plaintiff(s), which are expected to continue into the future, subject to proof at trial.

180.   As a direct and proximate result of the acts and omissions of the defendants, and each of them, as aforesaid, plaintiff(s) have been required to hire and retain the services of medical doctors, physicians, hospitals and other practitioners and will be required to do so, indefinitely in the future, for the proper care and treatment of injuries in amounts presently unascertained; plaintiff(s) prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

181.   As a further direct and proximate result of the acts and omissions of the defendants and each of them, as aforesaid, plaintiff(s) sustained wage loss and a future loss of earning capacity, in amounts presently unascertained; plaintiff(s) prays leave when said amounts

are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

182.   Plaintiff is also entitled to all statutory damages, including double or treble damages. On information and belief, DEFENDANTS and each of them, acted with malice and with the intent to cause injury to minor Plaintiffs, or acted with a willful and conscious disregard of the rights of Plaintiffs in a despicable, vile, and contemptible manner. Therefore, Plaintiffs are entitled to an award of punitive damages only against the individual defendants (as opposed to the agency or municipality) for the purpose of punishing DEFENDANTS, and to deter them and others from such conduct in the future.

## IX

### SEVENTH CAUSE OF ACTION FOR MALPRACTICE

(KAWAMI against Defendants RICHARD GILMAN & LINDA STEVENSON)

183.   Plaintiffs re-allege, and to the extent applicable, incorporate by reference herein as if set

forth in full, all paragraphs from the Common Allegations above.

184.   Plaintiff is informed and believes, and thereon allege, that each of these Defendants is responsible in some manner for the acts and omissions which damaged Plaintiff, and that Plaintiff's damages as alleged herein were proximately caused by their actions or omissions.

185.   Plaintiff is informed and believes and thereon alleges, that at all times herein mentioned, each of the Defendants, and Does 1 through 100, and each of them, were the agents and/or employees of each of the remaining Defendants, and in doing the things herein alleged, were acting within the course and scope of said agency and/or employment, in that the actions of each of the Defendants as herein alleged were authorized, approved, and/or ratified by each of the other Defendants as principals and/or employers.

186.   Appointed Counsel was ineffective by failing to challenge the WIC section 300, subdivision(b) & (j) jurisdictional findings in the

dependency proceedings. Appointed counsel willfully concealed facts, did not object to the allegations and did not contest the petition. The advice given by appointed counsel was for me to sign the case plan and "take it to trial". In cases which "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," ineffectiveness will be presumed under United States v. Cronic, 466 U.S. 648, 80 L.Ed.2d.657, 140 S.Ct. 2039 (1984). "If The Defendant Fails To Respond To An Allegation By Either Denying It Or By Stating He Or She Does Not Have The Information Necessary To Admit Or Deny It, It Is Considered Admitted Under Rule 8(d)."

187. After removing the ineffective counsel from the case, and representing myself at the adjudication hearing, the court reappointed the ineffective counsel without notice to me and in violation of the sixth amendment. "The right to counsel is the right to effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686, 80 L.Ed.2d 674, 104 S.Ct. 2052 (1984). In cases where the trial judge erred by denying a request for substitute

counsel, the Ninth Circuit has reported that the federal courts are nearly unanimous in their holding that an irreconcilable conflict between a defendant and his attorney that leads to a breakdown in communications can prevent an attorney from serving as the type of advocate guaranteed by the Sixth Amendment, as interpreted in such cases as Anders v. California, 386 U.S. 738, 18 L.Ed.2d 493, 87 S.Ct. 1396 (1967), and United States v. Cronic, 466 U.S. 648, 80 L.Ed.2d 657, 140 S.Ct. 2039 (1984). See, Plumlee v. Del Papa, 426. F.3d 1095, 1103 (9th Cir. 2005).

188. No matter how brief or succinct it may be, the evidentiary component of a juvenile petition is a distinct and essential predicate for a finding of jurisdiction. Cal. Weif. & Inst. Code § 332. Although the law required that the petition be sworn or certified under penalty of perjury, neither federal nor state law made it necessary for counsel to make that certification. (Kalina, supra, 522 U.S. at 129; see also Cal. Welf. & Inst. Code §332.)

**EIGHTH CAUSE OF ACTION FOR ASSAULT**

(By Plaintiff W.W. Against all COUNTY DEFENDANTS)

190. Plaintiff re-alleges, and to the extent applicable, incorporates by reference herein as if set forth in full, all paragraphs from the common allegations above.

191. Pursuant to Gov. Code, § 815.2, subd. (a), a county is liable for acts and omissions of its employees under the doctrine of respondent superior to the same extent as a private employer. Under Gov. Code § 815.2, subd. (b), the county is immune from liability if, and only if, the employee is immune. Under the Forth Amendment to the United States Constitution minor Plaintiff W.W. was at all times entitled, as a matter of law, to remain free from unreasonable search and seizure, in the absence of exigent circumstances, absent a court order or warrant.

192. Plaintiff is informed and believes and on such basis alleges that a reasonable Sheriff and/or social worker in Defendants' situation would have known it was wrongful to seize W.W. and detain him from his parents without first obtaining a warrant, or court order, to do so.

193. In the absence of exigent circumstances, and without any evidence to suggest that W.W. was in imminent danger of suffering serious bodily injury at the hands of either Plaintiff Parent, COUNTY DEFENDANTS, and each of them, by their conduct caused and/or intended to cause minor Plaintiff W.W. great apprehension and fear of harmful, or offensive, contact to his person. Each of the individual DEFENDANTS participated in, conspired with, approved of, and/or aided and abetted the conduct of the remaining COUNTY DEFENDANTS, and each of them in forcefully removing W.W. from his parents and detaining him out of the comfort and security of his family home.

194. The imminent harmful contact included, but was not limited to, DEFENDANTS' physical removal, detention, and continued detention of minor Plaintiff W.W. as set forth in detail herein above.

195. As the direct and proximate result of these COUNTY DEFENDANTS' actions, minor Plaintiff W.W. has suffered, and will continue to suffer permanent physical,

mental, and emotional injury, all to an extent and in an amount subject to proof at trial.

196. The actions of COUNTY DEFENDANTS, and each of them, are the legal and proximate cause of Plaintiff to sustain the damages and injuries claimed herein associated with the removal of the minor Plaintiff from his Plaintiff Parents' custody, and injuries and damages suffered subsequently thereafter, which have been ongoing and continuous since the date of the minor Plaintiff's removal from his Plaintiff Parents through the present, including without limitation severe and permanent personal, emotional and physical injuries, suffering financial damage in amounts presently unknown to the Plaintiff, which are expected to continue into the future, subject to proof at trial.

197. As a direct and proximate result of the acts and omissions of the defendants, and each of them, as aforesaid, plaintiff have been required to hire and retain the services of medical doctors, physicians, hospitals and other practitioners and will be required to do so,

indefinitely in the future, for the proper care and treatment of injuries in amounts presently unascertained; plaintiff's prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

198. As a further direct and proximate result of the acts and omissions of the COUNTY DEFENDANTs and each of them, as aforesaid, plaintiff sustained wage loss and a future loss of earning capacity, in amounts presently unascertained; plaintiff prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

199. Defendant COUNTY and its entities, and each of them named herein, are vicariously responsible for the conduct of each of the remaining defendants under Government Code Section 815.2(a) and Welfare and Institutions Code §16000.1, Scott v. County of Los Angeles, (1994) 27 Cal.App.4th 125, and other applicable statutory and case law.

200. INDIVIDUAL COUNTY DEFENDANTS, and each of them, acted with malice and with the intent to cause injury to minor Plaintiff W.W., or acted with a willful and conscious disregard of the rights of Plaintiff in a despicable, vile, and contemptible manner by removing the child and detaining said child from his parents without legal or factual cause to do so, suppressing exculpatory evidence. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing INDIVIDUAL COUNTY DEFENDANTS, and each of them, and to deter them and others from such conduct in the future as according to proof at trial.

## NINTH CAUSE OF ACTION FOR BATTERY

(By Plaintiff W.W. Against COUNTY DEFENDANTS)

201. Plaintiff re-alleges, and to the extent applicable, incorporates by reference herein as if set forth in full, all paragraphs from the common allegations above and those contained in the Ninth Cause of Action above.

## COUNT ONE

- 112 -

COMPLAINT FOR DAMAGES

(By Plaintiff W.W. Against COUNTY DEFENDANTS)

202. A state law battery claim is a natural counterpart to a federal unlawful seizure claim based on Constitutional rights arising under the 4th Amendment. See e.g. Brown v. Ransweiler (2009) 171 Cal.App.4th 516, 527. Under the Forth Amendment to the United States Constitution minor Plaintiff P.M. was at all times entitled, as a matter of law, to remain free from unreasonable search and seizure, in the absence of exigent circumstances, absent a court order or warrant.

203. In the absence of exigent circumstances, and without any evidence to suggest that W.W. was in imminent danger of suffering serious bodily injury at the hands of either Plaintiff Parent, COUNTY DEFENDANTS, and each of them, did make, or caused or allowed others to make, harmful and un-consented contact with minor Plaintiff W.W.'s body as he was unlawfully removed and detained by the COUNTY DEFENDANTS. Plaintiffs, and each of them, are informed and believe and on such basis allege that each of the individual SOCIAL WORKER DEFENDANTS participated in,

conspired with, approved of, and/or aided and abetted the conduct of the remaining COUNTY DEFENDANTS.

204. At no time did minor Plaintiff W.W. or the parent Plaintiffs consent, constructively or otherwise, to such contacts. Nor was any warrant or court order permitting such contact duly obtained.

205. As a direct and proximate result of these COUNTY DEFENDANTS' actions, minor Plaintiff W.W. has suffered, and will continue to suffer, physical, mental, and emotional injury, all to an extent and in an amount subject to proof at trial.

206. The actions of COUNTY DEFENDANTS, and each of them, are the legal and proximate cause of Plaintiff(s), to sustain the damages and injuries claimed herein associated with the removal of the minor Plaintiff from his Plaintiff Parents' custody, and injuries and damages suffered subsequently thereafter, which have been ongoing and continuous since the date of the minor Plaintiff's removal from his Plaintiff Parents through the present, including without limitation severe and permanent

personal, emotional and physical injuries, suffering financial damage in amounts presently unknown to the Plaintiff(s), which are expected to continue into the future, subject to proof at trial.

207. As a direct and proximate result of the acts and omissions of the defendants, and each of them, as aforesaid, plaintiff(s) have been required to hire and retain the services of medical doctors, physicians, hospitals and other practitioners and will be required to do so, indefinitely in the future, for the proper care and treatment of injuries in amounts presently unascertained; plaintiff(s) prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

208. As a further direct and proximate result of the acts and omissions of the defendants and each of them, as aforesaid, plaintiff(s) sustained wage loss and a future loss of earning capacity, in amounts presently unascertained; plaintiff(s) prays leave when said amounts

1   are ascertained, they may be permitted to amend and insert

2   the same herein with appropriate allegations.

3

4       209. Defendant COUNTY is vicariously responsible for

5   the conduct of the DEFENDANTS under Government Code

6   Section 815.2(a) and applicable other statutory and case

7

8   law.

9       210. In engaging in the foregoing conduct, INDIVIDUAL

10  COUNTY DEFENDANTS and each of them, acted with malice and

11

12  with the intent to cause injury to minor Plaintiff W.W.,

13  or acted with a willful and conscious disregard of the

14  rights of Plaintiff in a despicable, vile, and

15

16  contemptible manner. Therefore, Plaintiff is entitled to

17  an award of punitive damages for the purpose of punishing

18  INDIVIDUAL COUNTY DEFENDANTS, and to deter them and others

19

20  from such conduct in the future, in an amount according to

21  proof at trial.

22

23                        **COUNT TWO**

24      (By Plaintiff KAWAMI Against COUNTY DEFENDANTS)

25      211. Plaintiffs re-allege, and to the extent

26  applicable, incorporates by reference herein as if set

27

28

forth in full, all paragraphs from the common allegations above those contained in the First Cause of Action above, and those contained in Count One of the Ninth Cause of Action above.

212. Pursuant to California Code of Civil Procedure section 376, the parents of a minor child may maintain an action for damages which they have sustained arising from an injury to their child caused by the wrongful act or neglect of another.

213. At no time did minor Plaintiff Plaintiffs consent, constructively or otherwise, to such contacts. Nor was any warrant or court order permitting such contact duly obtained.

214. As a direct and proximate result of these COUNTY DEFENDANTS' actions, KAWAMI has suffered, and will continue to suffer damages all to an extent and in an amount subject to proof at trial.

215. The actions of DEFENDANTS, and each of them, are the legal and proximate cause of Plaintiff(s), to sustain the damages and injuries claimed herein associated with

the removal of the minor Plaintiff from his Plaintiff Parents' custody, and injuries and damages suffered subsequently thereafter, which have been ongoing and continuous since the date of the minor Plaintiff's removal from his Plaintiff Parents through the present, including without limitation severe and permanent personal, emotional and physical injuries, suffering financial damage in amounts presently unknown to the Plaintiff(s), which are expected to continue into the future, subject to proof at trial.

216. As a direct and proximate result of the acts and omissions of the defendants, and each of them, as aforesaid, plaintiff(s) have been required to hire and retain the services of medical doctors, physicians, hospitals and other practitioners and will be required to do so, indefinitely in the future, for the proper care and treatment of injuries in amounts presently unascertained; plaintiff(s) prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

217. As a further direct and proximate result of the acts and omissions of the defendants and each of them, as aforesaid, plaintiff(s) sustained wage loss and a future loss of earning capacity, in amounts presently unascertained; plaintiff(s) prays leave when said amounts are ascertained, they may be permitted to amend and insert the same herein with appropriate allegations.

218. In doing the things alleged herein above, INDIVIDUAL COUNTY DEFENDANTS and each of them, acted with malice and with the intent to cause injury to minor Plaintiff W.W., or acted with a willful and conscious disregard of the rights of Plaintiffs in a despicable, vile, and contemptible manner. Therefore, Plaintiffs are entitled to an award of punitive damages for the purpose of punishing INDIVIDUAL COUNTY DEFENDANTS, and to deter them and others from such conduct in the future, as according to proof at trial.

**PRAYER**

WHEREFORE, Plaintiffs pray for judgment against Defendants, as to all causes of action, as follows:

1.   Plaintiffs demand a jury trial as to the issues so triable;

2.   General damages and special damages according to proof;

3.   As against only the individual defendants and not any municipality or government agency, punitive damages as allowed by law;

4.   Attorneys fees pursuant to 42 U.S.C. §1988, and any other appropriate statute;

5.   Injunctive relief, both preliminary and permanent, as allowed by law, (including preliminary injunctive relief based upon a separate application);

6.   Costs of suit incurred herein; Interest at the legal rate; and

7.   Such further relief as the Court deems just and proper.

DATED: September 29, 2014

KAWAMI SHANNON
In Pro Per

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

COMPLAINT FOR DAMAGES

CIVIL COVER SHEET

**I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☒ )

SEE Attached

(b) County of Residence of First Listed Plaintiff **VENTURA**
*(EXCEPT IN U.S. PLAINTIFF CASES)*

(c) Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.
KAWAMI SHANNON, JONAYA HANEY,
(MINORS) A.H.,J.W.,W.W.,X.W.

**DEFENDANTS** ( Check box if you are representing yourself ☐ )

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*

Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1. U.S. Government Plaintiff
- ☐ 3. Federal Question (U.S. Government Not a Party)
- ☒ 2. U.S. Government Defendant
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

- ☒ 1. Original Proceeding
- ☐ 2. Removed from State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Reinstated or Reopened
- ☐ 5. Transferred from Another District (Specify)
- ☐ 6. Multi-District Litigation

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No  (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☒ No     ☐ **MONEY DEMANDED IN COMPLAINT:** $

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
KAWAMI SHANNON, JONAYA HANEY, A.H.,J.W.,W.W.,and X.W. bring this civil rights lawsuit pursuant to 42 U.S.C. Section 1983 to redress the deprivation by defendants

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☐ 400 State Reapportionment | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 410 Antitrust | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 430 Banks and Banking | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 450 Commerce/ICC Rates/Etc. | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 460 Deportation | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 480 Consumer Credit | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 490 Cable/Sat TV | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 850 Securities/Commodities/Exchange | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 890 Other Statutory Actions | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 891 Agricultural Acts | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 893 Environmental Matters | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 895 Freedom of Info. Act | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☒ 440 Other Civil Rights | **LABOR** | |
| ☐ 896 Arbitration | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 740 Railway Labor Act | |
| ☐ 950 Constitutionality of State Statutes | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

**FOR OFFICE USE ONLY:**     Case Number:     **LACV14-7567**

CIVIL COVER SHEET

**VIII.  VENUE**: Your answers to the questions below will determine the division of the Court to which this case will be initially assigned.  This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| **QUESTION A:  Was this case removed from state court?** ☐ Yes ☒ No<br><br>If "no, " skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☒ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| **QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action?** ☐ Yes ☒ No<br><br>If "no," skip to Question C. If "yes," answer Question B.1, at right. | **B.1.** Do 50% or more of the defendants who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there.<br><br>☒ NO. Continue to Question B.2. |
|---|---|---|
| | **B.2.** Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there.<br><br>☒ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| **QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action?** ☒ Yes ☐ No<br><br>, " skip to Question D. If "yes," answer Question C.1, at right. | **C.1.** Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there.<br><br>☒ NO. Continue to Question C.2. |
|---|---|---|
| | **C.2.** Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties? (Consider the two counties together.)<br><br>*check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there.<br><br>☒ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| **QUESTION D:  Location of plaintiffs and defendants?** | **A.**<br>Orange County | **B.**<br>Riverside or San Bernardino County | **C.**<br>Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside.  (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside.  (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |

| **D.1. Is there at least one answer in Column A?** ☐ Yes ☒ No<br><br>If "yes," your case will initially be assigned to the SOUTHERN DIVISION.<br><br>Enter "Southern" in response to Question E, below, and continue from there.<br><br>If "no," go to question D2 to the right. ➡ | **D.2. Is there at least one answer in Column B?** ☐ Yes ☒ No<br><br>If "yes," your case will initially be assigned to the EASTERN DIVISION.<br><br>Enter "Eastern" in response to Question E,  below.<br><br>If "no," your case will be assigned to the WESTERN DIVISION.<br><br>Enter "Western" in response to Question E, below. ⬇ |
|---|---|

| **QUESTION E: Initial Division?** | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | WESTERN |

| **QUESTION F: Northern Counties?** | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☒ Yes  ☐ No |

CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**?  ☒ NO  ☐ YES

If yes, list case number(s): _____

**IX(b). RELATED CASES:** Is this case related (as defined below) to any cases previously filed **in this court**?  ☒ NO  ☐ YES

If yes, list case number(s): _____

Civil cases are related when they:

☐ A. Arise from the same or closely related transactions, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Check all boxes that apply. That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**X. SIGNATURE OF ATTORNEY
(SELF-REPRESENTED LITIGANT):** *K Shannon*     DATE: September 28, 2014

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |

KAWAMI SHANNON, JONAYA HANEY, A.H.(Minor), J.W.(Minor),
W.W.(Minor), X.W.(Minor),

        Plaintiff,

    vs.

SIMI VALLEY SCHOOL DISTRICT,a public entity;DEBORA PALMER,a
public employee;STACY ROBERTS,a public employee;COUNTY OF
VENTURA;a public entity; TRACY THORNE,a public
employee;DANTE FEW,a public employee;KATHY D'INCA,a public
employee;MICKI CONSTANTINE,a public employee;ANNE ODELL,a
public employee;THERESA MAYERNIK,a public employee;SIMI
VALLEY POLICE DEPARTMENT,a public entity; DON ANDERSON,a
public employee;MICHELLE SAVAGE a public employee;RICHARD
GILMAN a public employee; LINDA STEVENSON,a public
employee;

        Defendants

Kawami Shannon
2313 Marilyn St.
Simi Valley, CA 93065

9001284701

CENTRAL DISTRICT OF CALIFORNIA
DEPUTY

CLE[

DEC - 5 2014

United States Courthouse
312 North Spring St.
Los Angeles, CA 90012-4701
Civil Intake G-8

FOREVER USA

FOREVER USA